Argued and submitted April 5, affirmed April 21, 1971

FREIGHTLINER CORPORATION, *Appellant and Cross-Respondent, v.* DEPARTMENT OF REVENUE, *Respondent and Cross-Appellant.*

483 P2d 1307

*John H. Doran,* Portland, argued the cause for appellant and cross-respondent. With him on the briefs were McColloch, Dezendorf, Spears & Lubersky, Portland.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for respondent and cross-appellant. With him on the brief were Lee Johnson, Attorney General, and Donald C. Seymour, Assistant Attorney General, Salem.

Before McALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

DENECKE, J.

The plaintiff taxpayer is in the business of manufacturing and assembling heavy-duty, over-the-road trucks and tractors. The principal issue is whether certain automotive parts and materials in the taxpayer's inventory are within the scope of the Oregon Free Port Act and, therefore, exempt from the assessment of the personal property tax. ORS 307.810 et seq.

All the parts involved come from out of state. They are assembled into a truck in Oregon; the completed truck is then shipped out of state. The parts for which the exemption is claimed are in two categories. In one are such parts as engines, air conditioners, transmissions and wheels. The taxpayer does nothing to these except attach them to the truck, usually by bolts, but occasionally by rivets, glue or welds. The other category is parts which need some adaption by the taxpayer before they can be attached

to the truck; examples are fifth wheels and seats, which need holes drilled.

The parts were located in four areas, three of which were strictly storage, and the fourth partially storage and partially assembly. The trucks were put together by the assembly-line method.

ORS 307.810 (1) provides:

> "Personal property in transit through this state is goods, wares and merchandise destined for sale in the ordinary course of trade or business, manufactured or produced outside the state and brought into the state for transshipment to an out-of-state destination (other than the county of origin), while being so shipped or while held in public or private storage awaiting further shipment. Such property is deemed to have acquired no situs in Oregon for purposes of taxation. Such property shall not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990."

The purpose of the Free Port Act was "to promote Oregon as a storage and distribution center thus enhancing Oregon business." *Weyerhaeuser Co. v. Tax Comm.*, 244 Or 561, 566, 419 P2d 608 (1966).

We recently held that wheels, axles, frames and springs which were brought into Oregon and put together into trucks for railroad cars, which cars were shipped out of state, were entitled to the free port exemption. *Gunderson Bros. Eng. v. Tax Comm.*, 256 Or 98, 471 P2d 802 (1970). The majority of this court so held, however, primarily because we interpreted a stipulation by the Department in that case to amount to a concession that the property was entitled to the

exemption. The majority stated: "If we were to interpret these facts and the statute, apart from any stipulation, we would have grave doubts whether the taxpayer is entitled to the free port exemption * * *." 256 Or at 100. Three Justices of this court were of the opinion that despite the stipulation, the property was not entitled to the free port exemption. The dissenting opinion stated: "* * * The statute was not intended to provide an exemption for goods shipped into Oregon for the purpose of manufacturing them into a finished product in Oregon. * * *" 256 Or at 105. That is the correct interpretation of the Free Port Act.

We here adopt as our opinion, as did the dissent in *Gunderson Bros.*, a part of the opinion of the Tax Court in the instant case, *Freightliner Corp. v. Dept. of Rev.*, 3 OTR 528, 533 (1969):

> "The evidence clearly establishes that plaintiff is in the business of manufacturing trucks; it is not in the business of warehousing or being a storage and distribution center for goods brought into this state for transshipment out of state. Although the statute provides that the exemption is not lost because the goods are assembled, bound or joined while in the warehouse, the plaintiff's business of building trucks starting with a frame rail and ending with a completed truck ready for delivery goes beyond the type of assembling, binding or joining contemplated by the free port statute.

> "* * * * *

> "If the plaintiff as a manufacturer of trucks is entitled to the benefit of the free port act, then every manufacturer in Oregon who purchases parts from out of state and assembles them into a unit for shipment out of state is entitled to exemption. This is not the warehousing, storing and distributing that was intended by the act."

■ The taxpayer contends that the stipulation of the Department in the *Gunderson* case was an administrative construction by the Department of the statute and as such entitled to great weight. The stipulation was not an administrative construction of the kind referred to in the decisions cited by the taxpayer. It was a stipulation made in one case for the purpose of expediting trial.

■ The taxpayer also contends that the Department is guilty of unfair discrimination if the present taxpayer is taxed and Gunderson with a like operation is exempted. The Department has not discriminated; it attempted to deny the exemption to both taxpayers. Decisions of the Tax Court and this court have resulted in different results for the two taxpayers; however, that has occurred because the proof was different. This is not an uncommon occurrence.

The Department has cross-appealed contesting the Tax Court's valuation of personal property for which no free port exemption was claimed.

■ The taxpayer was able to purchase certain items of personal property for less than the market price because of discounts, rebates and allowances granted by suppliers. However, on its books the taxpayer entered the value of these items at market price. As permitted, the taxpayer submitted to the assessor both the book value and what it considered as the true cash value, that is, the book value less the discounts, rebates and allowances. The assessor fixed the value as book. The Tax Court reduced the value to actual cost, including the decrease in cost due to discounts, rebates and allowances.

Reg. R 308.205(B)-2-b of the Department provides that inventory is to be valued at cost or market, whichever is lower; in this case cost was lower.

The contention of the Department is that under the doctrine of *West House, Inc. v. State Tax Com.*, 228 Or 167, 364 P2d 598 (1961), the assessor had the right to accept the book value as the true cash value and if the taxpayer wanted its cost to be used as true cash value it should have entered such cost value as its book value. That is not the doctrine of the *West House* case. The dictum relied upon by the Department is to the effect that the Department can adopt a regulation giving presumptive validity to book value as true cash value. The regulation applicable here does not do so. Reg. R 308.205(B)-2-b provides that the taxpayer shall always report book value to the assessor, but it can also report a different value as the true cash value. That is what the taxpayer did here.

In addition, the court in *West House, Inc. v. State Tax Com.*, supra (228 Or 167), quoted *M & M Woodworking Co. v. Tax Com.*, 217 Or 161, 192, 314 P2d 272, 317 P2d 920, 339 P2d 718 (1959): " 'We cannot accept the thesis advanced by the commission that book value is, as a matter of law, the equivalent of true cash value as defined by the statute we have quoted.' " 228 Or at 172.

The valuations fixed by the Tax Court are affirmed.

Affirmed.