Argued March 4, reversed May 13, 1976

# FREIGHTLINER CORPORATION, *Respondent,*
## *v.*
# DEPARTMENT OF REVENUE, *Appellant.*

549 P2d 662

Argued and submitted March 4, 1976.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was Lee Johnson, Attorney General.

*John H. Doran,* of Dezendorf, Spears, Lubersky & Campbell, Portland, argued the cause and filed a brief for respondent.

Before McAllister, Presiding Justice, and Denecke, Holman, Howell and Bryson, Justices.

HOWELL, J.

**HOWELL, J.**

The defendant, Department of Revenue, appeals from a decree of the Oregon Tax Court striking omitted property assessments made by the Multnomah County Assessor against personal property owned by plaintiff.

Plaintiff, a manufacturer of heavy-duty trucks and tractors, claimed and was granted an exemption for certain personal property under the Oregon Free Port Act, ORS 307.810 et seq. The exemption was first allowed in 1960. The assessor denied the exemption for 1967 on the grounds that the plaintiff's property did not qualify for free port exemption. The denial was affirmed by this court, *Freightliner Corp. v. Dept. of Rev.*, 258 Or 478, 483 P2d 1307 (1971), *aff'g.* 3 OTR 528 (1969).

Subsequent to our decision, the county assessor filed omitted property assessments for the years 1965-66 and 1966-67, the only two of the five years which were open under the omitted property statute, ORS 311.207.[1] The assessments were sustained by the defendant, Department of Revenue, and plaintiff appealed to the tax court. Plaintiff contended that the denial of a previously granted exemption did not fall under the omitted property statutes and that any assertion of those statutes against plaintiff was discriminatory and, therefore, constitutionally improper. The tax court sustained a demurrer to this complaint, *Freightliner Corp. v. Dept. of Rev.*, 5 OTR 270 (1973).

---

[1] ORS 311.207 provides, in part:

"Whenever, after the return of the assessment rolls to the county assessor by the board of equalization, the assessor discovers or receives credible information, or if he has reason to believe that any real or personal property, including property subject to assessment by the Department of Revenue, or any buildings, structures, improvements or timber on land previously assessed without the same, has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last roll so returned, he shall give notice as provided in ORS 311.209."

[ 15 ]

However, plaintiff then filed an amended complaint asserting essentially the same issues in more detail. Following a trial on the merits, the tax court held that the omitted property statute applied but that the assessments were invalid because they amounted to an illegal discrimination against plaintiff and violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Freightliner Corp. v. Dept. of Rev.,* 6 OTR 70 (1975).

■ Plaintiff argues that applying omitted property assessments against it violates Art IX, § 1, and Art I, § 32, of the Oregon Constitution—requiring that taxes be uniform on the same class of subjects—as well as the equal protection clause of the Fourteenth Amendment to the federal constitution. Both the state and federal constitutional provisions proscribe arbitrary or discriminatory enforcement of tax laws. *Penn Phillips Lands v. Tax Com.,* 247 Or 380, 430 P2d 349 (1967), *aff'g. as mod.* 2 OTR 373 (1966).

The plaintiff contends, and the tax court held, that the assessments were constitutionally invalid because the county assessor and the Department of Revenue failed to initiate similar omitted property assessments in four instances in which other taxpayers lost a previously recognized exemption as the result of a court decision. Plaintiff notes that omitted property assessments have been regularly made against commercial and industrial companies, like plaintiff, after the decisions denying their exemptions. *See Hyster Company v. Dept. of Rev.,* 4 OTR 351 (1971); *Roseburg Lbr. Co. v. Tax Com.,* 255 Or 13, 463 P2d 590 (1970), *aff'g* 3 OTR 323 (1969); *Western States Fire v. Dept. of Rev.,* 4 OTR 11 (1969); *Cominco Products, Inc. v. Tax Com.,* 243 Or 165, 411 P2d 85 (1966), *rev'g* 2 OTR 157 (1965). Plaintiff also points out that no omitted property assessments were levied following similar decisions concerning other classes of taxpayers. *See R.L.K. and Co. v. Tax Commission,* 249 Or 603, 438 P2d 985, *rev'g* 3 OTR 304 (1968) (property leased from federal government); *Falkenstein v. Department of Revenue,* 350 F Supp 887

(D Or 1972) (fraternal lodges); *Plywood & Veneer Local v. Commission,* 2 OTR 520 (1967) (labor organization); *YMCA v. Dept. of Rev.,* 268 Or 633, 522 P2d 464 (1974), *aff'g as mod.* 5 OTR 281 (1973) (charitable organization). Plaintiff contends that these cases evidence a systematic pattern of discrimination against plaintiff and other commercial and industrial taxpayers.

The rule relating to arbitrary discrimination amounting to a violation of the Equal Protection Clause in tax cases has been succinctly stated by the United States Supreme Court:

> "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. * * * It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party. * * *" *Sunday Lake Iron Co. v. Wakefield,* 247 US 350, 352-53, 38 S Ct 495, 62 L Ed 1154 (1918). (Citations omitted.)

*See also Sioux City Bridge Co. v. Dakota County,* 260 US 441, 43 S Ct 190, 67 L Ed 340 (1923). *Compare Liggett Co. v. Lee,* 288 US 517, 53 S Ct 481, 77 L Ed 929 (1933). Thus, the issue presented is whether the actions of the assessor, and of the Department of Revenue in its supervisory capacity, in failing to assert omitted property assessments against some taxpayers while assessing plaintiff and other commercial taxpayers, amount to an intentional and systematic pattern of discrimination. We find that these actions do not, and we reverse.

In *YMCA v. Dept. of Rev., supra,* we held that a barber shop and a tailor shop in a YMCA building were subject to taxation but that the rest of the building was exempt. The defendant did not expressly order, and the local assessor did not thereafter apply, an omitted property assessment on the subject property for former years. However, there was evidence that the amount of taxes involved in levying omitted assessments on the barber shop and tailor shop would have been minimal.

In 1972, the United States District Court held that the statutes granting the Elks Lodge a tax exemption as a fraternal organization were unconstitutional as violating the equal protection clause of the Fourteenth Amendment because the Elks practiced racial discrimination in its membership. *Falkenstein v. Department of Revenue, supra.* The ruling would have affected other fraternal organizations following the same practice. The decision of the District Court stated that the tax exemption "must be enjoined." Thereafter, the Department of Revenue entered a supervisory order to the assessors requiring them to place on the 1972-73 tax rolls all property belonging to the Elks Lodge and all other fraternal organizations practicing discrimination. However, in June, 1974, the Department of Revenue and counsel for the Elks and Moose Lodges entered into a consent order which stated that both lodges had removed racial clauses from membership requirements and which stipulated that the Elks Lodge was taxable for the 1973-74 year but that the Moose Lodge was exempt for 1973-74 because of an earlier removal of the discriminatory provision. The consent order also provided that no omitted property assessments would be made against either organization.[2]

Similarly, following our decision in *R.L.K. and Co. v. Tax Commission, supra,* regarding the taxation of

---

[2]It was the position of counsel for defendant Department of Revenue that the District Court opinion did not require assessment of back taxes but enjoined only future exemptions.

property held under special use permits from the federal government, the Department of Revenue, in July of 1971, advised the county assessors to place property held by such permittees on the tax rolls.[3] However, the letter also instructed the assessors not to assess back taxes under the omitted property statutes. At the trial in this case, it was admitted that this instruction was contrary to the opinion of the department's legal staff and may have been an error in judgment.

Finally, the plaintiff points to the failure of the defendant to order omitted property assessments following the decision of the tax court in *Plywood & Veneer Local v. Commission,* 2 OTR 520 (1967). There, it was decided that a building owned by a local labor union was not entitled to a tax exemption as a fraternal organization. Apparently, the defendant did not assess the property as omitted property following the tax court's decision. Neither party offered any evidence at the trial of the instant case as to the reason for not assessing back taxes, and we will assume there was no valid reason.

In our view, the failure to assess back taxes in the above instances does not demonstrate an intentional, systematic or arbitrary discrimination against plaintiff. The burden of establishing intentional discrimination rests upon the taxpayer challenging the official action. *Charleston Assn. v. Alderson,* 324 US 182, 65 S Ct 624, 89 LEd 857 (1945); *Sunday Lake Iron Co. v. Wakefield, supra; Southland Mall, Inc. v. Garner,* 455

[3]The Department of Revenue's letter stated that such property was taxable as a result of this court's decision in *R.L.K. and Co. v. Tax Commission,* 249 Or 603, 438 P2d 985 (1968). That statement was incorrect. *R.L.K.* merely decided the factors to be considered in determining the true cash *value* of the landholder's interest under ORS 307.060, which provides for the taxation of a leasehold or other interest or estate less than a fee simple. The genesis of the *taxability* of a lessee's or permittee's interest was actually *Sproul et al v. Gilbert et al,* 226 Or 392, 359 P2d 543 (1961), which held that grazing leases held by ranchers under the Taylor Grazing Act were taxable under ORS 307.060. It was not until this court decided *Ore. Summer Hm. Owners v. Johnson,* 265 Or 544, 510 P2d 344 (1973), that it was judicially determined that summer homes held under a special use permit were also taxable under ORS 307.060.

F2d 887 (6th Cir 1972). The required element has been characterized as "something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity." *Rowley v. Chicago & N.W. Ry.,* 293 US 102, 111, 55 S Ct 55, 79 L Ed 222 (1934); *Southland Mall, Inc. v. Garner, supra* at 889. We do not believe that four instances in which omitted property assessments have not been levied is sufficient evidence of an intentional disregard for the principle of uniformity so as to justify relieving all other taxpayers who are properly subject to such assessments. *See Liggett Co. v. Lee, supra* at 540. *Compare Robinson et ux v. State Tax Com.,* 216 Or 532, 339 P2d 432 (1959), *with Penn Phillips Lands v. Tax Com., supra. See also Commonwealth, Inc. v. Dept. of Rev.,* 259 Or 140, 484 P2d 1103 (1971), *rev'g.* 4 OTR 80 (1970). We will assume that the taxing officials committed errors in judgment in failing to make the omitted assessments in some of the cases outlined above. However, such errors are insufficient to show an intentional violation of the "principle of practical uniformity." *Sunday Lake Iron Co. v. Wakefield, supra* at 353. *Accord Charleston Assn. v. Alderson, supra; Rowley v. Chicago & N.W. Ry., supra; Southland Mall, Inc. v. Garner, supra.* Consequently, we conclude that the tax court was incorrect in determining that this taxpayer has shown that it has been subjected to an arbitrary or discriminatory omitted property assessment.

The plaintiff makes a cross-assignment of error contending that the omitted property statute, ORS 311.207(1), does not allow the assessor to levy an omitted property assessment upon the denial of a previously authorized exemption. Plaintiff states its position as follows:

"Simply stated, it is plaintiff's position that once an assessor, acting with full knowledge of the existence, nature and utilization of property, grants such property an exemption from taxation, the omitted property law does not authorize the retroactive revocation of the exemption. * * *" (Footnote omitted.)

[ 20 ]

In its original opinion, the tax court determined that ORS 311.207 requires the assessor to assess taxable property when, for "any cause," that property has been omitted from assessment and taxation. "Any cause" was found to include those situations in which the property was omitted by the assessor under a mistake of law as well as a mistake of fact. In this case, the assessor may have been mistaken when he originally granted the exemption to Freightliner in 1960. However, this mistake was corrected in 1967 and, after the decision of this court in *Freightliner Corp. v. Dept. of Rev.,* 258 Or 478, 483 P2d 1307 (1971), the assessor acted correctly in asserting the assessment for the previous years. This issue has been fully discussed by the tax court in its original opinion in this case (5 OTR 270 (1973)), and we concur in the reasoning expressed therein.

Reversed.