# STUART V. HINSON
*v.*
## DEPARTMENT OF REVENUE

John E. Ferris, John E. Ferris, P.C., Medford, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision to plaintiff rendered March 31, 1978; remanded to defendant.

CARLISLE B. ROBERTS, Judge.

As of January 1, 1975, the County Assessor of Josephine County removed certain real property owned by the plaintiff from the classification of special farm use assessment on the ground that the property was not being used for farm purposes. ORS 308.370 to 308.399. The subject property is described as Assessor's Account Nos. 5-35-05-30-201 (comprising 25 acres) and 5-35-05-30-222 (comprising 9.65 acres). When the matter was appealed by the plaintiff to the Department of Revenue, pursuant to ORS 306.520 (1975 Replacement Part), seeking restoration of the farm use classification and for abatement of real property taxes added to the tax rolls for the tax years 1970-1971 through 1976-1977, the defendant dismissed the petition for lack of jurisdiction, on account of failure of timely filing.

ORS 306.520 (1975 Replacement Part) provided that the aggrieved taxpayer may appeal to the Department of Revenue on account of an act or omission of a county assessor or tax collector which affects his property and for which there is no other statutory remedy

"* * * within six months after the act or omission becomes actually known to the taxpayer but in any event

[ 398 ]

not more than two years after such act or omission becomes a matter of public record, * * *."

It is undisputed that the county assessor notified the plaintiff in a letter dated February 20, 1975, that the land was to be removed from the special farm use assessment as of the assessment date for the next tax year, beginning July 1, 1975. This letter was received by the plaintiff and acknowledged by him on February 21, 1975. The petition to the Department of Revenue was signed by the plaintiff on January 7, 1977, and received by the Department of Revenue on January 17, 1977, more than one year and 10 months after the act of the county assessor had become known to the plaintiff. However, the plaintiff pleads, in his complaint filed with the court:

"V. The County Assessor indicated at all relevant times and up to November of 1976 that discussion of the matter with local assessor's office would be the proper method of handling any objections Plaintiff had to this change of tax status. These discussions were continuous throughout 1975 until well after the six month period had elapsed.

"VI. Plaintiff appealed to the Department of Revenue within the two-year allowable appeal period.

"VII. The Assessor should be estopped from applying the six-month limitation period of the statute in that his acts and conduct in dealing with the Plaintiff led Plaintiff into believing he could solve the problem by negotiating with the Assessor, thereby causing Plaintiff to fail to observe the six-month filing requirement."

The defendant's answer has denied each of the above-quoted paragraphs of the complaint. Since the plaintiff had actual knowledge of the act of the assessor, he was required to appeal within six months of such knowledge. The two-year period referred to in the statute would not be applicable. *Century Pontiac, Inc. v. Commission,* 3 OTR 205, 208 (1968).

The plaintiff further relies on a theory of equitable estoppel.

[ 399 ]

The plaintiff is an active businessman who operates a truck line and an airplane charter company. He owns two peices of property in Josephine County and, during the years in question, apparently leased them to two men, Messrs. Church and Pace, for the grazing of cattle. The plaintiff depended upon Mr. Wayne W. Voigt, a certified public accountant, as manager of his interests in Josephine County.

On February 20, 1975, Mr. R. C. Elsasser, Farm Deputy for the Josephine County Assessor, mailed a written notification to Mr. Hinson, informing him that the farm use classification of the subject property would be removed as of January 1, 1975, because of the nonuse of the land for farming purposes. A tax bill for deferred taxes (*see* ORS 308.395 and 308.399) was enclosed. The last paragraph of the letter stated:

> "If you disagree with this determination, we would be happy to discuss the situation with you. Further appeals may be made to the Department of Revenue under ORS 306.520. Forms for this purpose are available from this office."

Mr. Hinson received this letter on February 21, 1975, and turned it over to Mr. Voigt, who prepared an answer for Mr. Hinson's signature, under date of March 12, 1975, as follows:

> "Regarding your notice of February 20, 1975 removing property in Josephine County from farm assessment. Please be advised that the property is still being used by Stanley Pace and Dave Church to graze cattle. If statements from them are required please advise so they may be sent to you. If further appeal is necessary please forward forms to my address so that appeal can be made under ORS 306.520."

On March 17, 1975, Mr. Elsasser wrote to Mr. Hinson:

> "In response to your letter of March 12, 1975, I am forwarding to you two Farm Use Evaluation Forms. If the property qualifies for farm use, have Mr. Stanley Pace and Mr. Dave Church fill out the enclosed forms and provide copies of sales receipts or the appropriate tax schedules denoting income derived from farm use of the

two referenced tax lots. Please return same as soon as possible.

"If you have any additional questions, please do not hesitate to contact me."

The next communication is dated March 24, 1975, and is a handwritten letter, signed by Mr. Elsasser, directed to Mr. Hinson, which states:

"Please have forms filled out by Mr. Dave Church and Mr. Stanley Pace. I explained in telecon with your CPA (this date) that they must verify 1974 farm income and provide copies of their tax statement or sales receipts etc."

Following this exchange of correspondence, August 20, 1975, passed without any appeal having been made to the Department of Revenue as required by ORS 306.520 (1975 Replacement Part), "within six months after the act [of the county assessor in withdrawing farm use classification] or omission becomes actually known to the taxpayer * * *." Apparently, subsequent to this date, the plaintiff engaged counsel, as shown by the next written communication in the exchange between the county assessor's office and the plaintiff's agent, a letter dated November 12, 1975, on Josephine County Assessor's stationery, handwritten by "Ron," (Ron Elsasser, Farm and Forest Deputy) to "Jane" (Ms. Jane Morley, Attorney at Law, Medford), stating:

"[E]nclosed are the documents you requested per our telecon this date. Please advise if you need additional data."

On February 16, 1976, Ms. Morley wrote to Mr. Elsasser as follows:

"Some time ago we discussed the matter of the loss of the farm assessment on the above referenced parcels.

"We have since been trying to obtain verification from the tenant in possession of the parcels that he was indeed using the parcels to run cattle on, and that these cattle were being sold for money.

"We have finally received the enclosed from the tenant, Dave Church. Based on this information, we request that the Assessor nullify his previous decision

which removed from the above parcels the special farm assessment."

On March 2, 1976, Mr. Elsasser wrote to Ms. Morley, apparently in answer to her letter of February 16, 1976, reviewing the matter of the removal of the special assessment for farm use from the Hinson property once again, pointing out that it was based upon a physical inspection and subsequent nonconfirmation of farm use by the owner. He refers to personal inspections of the property in the fall of 1974, summer of 1975, November 13, 1975, and March 1, 1976. "In all cases: no cattle on property, no irrigation equipment, overgrown with weeds, no visible attempt to maintain property as pastureland (only thing visible was FOR SALE sign)." He notes receipt of a form stating that the land was leased to Dave Church and Stanley Pace in return for caretaker services and another form stating that Stanley Pace had not run cattle on the land since 1972 and an application form in which Mr. David Church qualified his own farm property for farm use but not the subject property. The letter concludes:

> "In my estimation; based upon a review of the above and in accordance with ORS 308.370 and applying criteria of OAR 150-308.380, Mr. Hinson's property is not qualified for special assessment for farm use.
>
> "If you have additional questions, please do not hesitate to contact me."

Mr. Voigt, as manager of Mr. Hinson's interests in Josephine County, testified that, on plaintiff's behalf, he had been in contact with Mr. Elsasser on numerous occasions regarding the subject property. He stated that he felt he had complied with all the requests of the assessor's office in the course of his dealings with it. Mr. Voigt testified that his exchanges with the assessor's office regarding the subject property continued at least through July 1976, and that throughout these exchanges the assessor's office gave him the impression that the proper course of conduct in this matter was to deal directly with that office. He stated

that no one in the assessor's office ever mentioned a time limit within which an appeal must be filed, even though they continued to discuss the matter for almost a year after the six-month time limitation had passed.

■ At an earlier day, the essential elements of an equitable estoppel were set out in *Bennett v. City of Salem et al.,* 192 Or 531, 541, 235 P2d 772, 776 (1951), and were quoted in *Earls et ux v. Clarke et al,* 223 Or 527, 530-531, 355 P2d 213, 214 (1960):

> "To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it. *State v. Claypool,* 145 Or. 615, 28 P. 2d 882; *Bramwell v. Rowland,* 123 Or. 33, 261 P. 57; *Oregon v. Portland Gen. Elec. Co.,* 52 Or. 502, 528, 95 P. 722, 98 P. 160; 31 C.J.S., Estoppel, 254, § 67."

■ However, following the decisions above cited, a number of equitable estoppel cases relating to taxation have been decided in Oregon, beginning with *Johnson v. Commission,* 2 OTR 504, *aff'd,* 248 Or 460, 435 P2d 302 (1967). Prior to the *Johnson* case, even a direct erroneous statement by a state employee, made in ignorance but intended to cause the taxpayer to take action, was held not to estop the governing body. *Miller v. Commission,* 1 OTR 488 (1964). Equitable estoppel was found in *Johnson v. Commission, supra; Pilgrim Turkey Packers v. Dept. of Rev.,* 261 Or 305, 493 P2d 1372 (1972); and *Uniroyal v. Dept. of Rev.,* 5 OTR 29 (1972), because of an incorrectly worded or ineptly drafted tax form. Again, in *Cascade Manor, Inc., et al v. Dept. of Rev.,* 5 OTR 482 (1974), wherein the county assessor's agent was shown to have voluntarily followed a course of conduct in successive years, engendering reliance therein, the court found equitable estoppel. As stated in the last-named case, at 487-488:

"* * * In the present case, the form used in prior years could be deemed defective in not stating the filing date thereon, but the chief reliance of the taxpayers is on the course of conduct of the exemption clerk, not in the form. However, in neither the *Johnson* case nor the *Pilgrim Turkey Packers* case, was there any hint that the misrepresentation was made with the intention to mislead; this element of equitable estoppel was disregarded by the Supreme Court. It is also obvious that access to the pertinent law was available to the parties in each instance but the court appears to have waived this third element of estoppel, urged by defendant. * * *"

 In the present suit, the testimony is that the plaintiff, through his agents, relied upon the course of conduct of Mr. Elsasser, the county assessor's Farm Deputy. In the letter drafted by Mr. Voigt, under date of March 12, 1975, for Mr. Hinson's signature, he posed an alternative to Mr. Elsasser; *i.e.,* if statements from the tenants on the farm property, who were presumably grazing cattle, were required, "[P]lease advise so they may be sent to you. If further appeal is necessary please forward forms to my address so that appeal can be made under ORS 306.520." Mr. Elsasser thereupon forwarded Farm Use Evaluation Forms, not appeal forms, and thereby, it is argued, misled the certified public accountant. Plaintiff further argues that the assessor's staff misled him, his attorney and Mr. Voigt into believing that an appeal was not immediately necessary by continuing to attempt to resolve the matter with plaintiff and his representatives for almost a year after the appeal period had expired. Although it would seem to be difficult to mislead an attorney and a certified public accountant, it appears that the Oregon doctrine of equitable estoppel in tax cases is applicable here and the court so finds. As stated in *Meeks v. Dept. of Rev.,* 7 OTR 113, 117 (1977), the notice of disqualification should be sent to the taxpayer after the county assessor has acted by changing the assessment roll. When the assessor determines that land specially assessed as farm land is no longer being farmed and acts upon this

determination by disqualifying the land from the special assessment, and billing the owner for deferred taxes, the assessor's authority over the matter is exhausted. It is improper for the assessor to lead a taxpayer to believe, as in this case, that further dealings with the assessor, rather than an appeal to the Department of Revenue, can alter the assessor's action. When the assessor does mislead a taxpayer, the assessor will be estopped from claiming that the taxpayer failed to appeal within the statutory six-month period. (The court is not unmindful of the caveats to the use of equitable estoppel, set out in *Johnson v. Tax Commission,* 248 Or 460, 463-464, 435 P2d 302, 304 (1967)):

> "* * * The policy of efficient and effective tax collection makes the doctrine of rare application. It could only be applied when there is proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *"

Comparing the facts, this case is much weaker than *Johnson,* but appears to come within its rule.)

At the time of trial, counsel stipulated that if the court sustained the plaintiff's theory of estoppel, thus eliminating the issue of the statutory limitation on the time in which to appeal to the Department of Revenue from the action of the county assessor, the cause should be remanded to the Department of Revenue to determine the second issue, the denial of the farm use classification on the merits (but relying solely on the record made at the hearing before the Department of Revenue's hearing officer on March 17, 1977), after which the defendant would issue a new opinion and order determining the farm use disqualification issue on the merits.

Counsel for plaintiff shall prepare the necessary order of remand of the issue of farm use disqualification to the Department of Revenue. Plaintiff is

[ 405 ]

entitled to its statutory costs and disbursements in this court.