## PACIFIC CONFERENCE OF THE EVANGELICAL CHURCH, NORTH AMERICA
### *v.*
### DEPARTMENT OF REVENUE

Mark Rader, Rader & Rader, Portland, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered April 24, 1978.

CARLISLE B. ROBERTS, Judge.

The plaintiff, Pacific Conference of the Evangelical Church, North America, an Oregon nonprofit corporation, is recognized by the defendant, during the years pertinent to this suit, to be a religious organization within the purview of ORS 307.140. Beginning not later than 1944, the plaintiff became the owner of a tract of property, known as the "Jennings Lodge Conference Grounds," identified as Assessor's Account Nos. 2S 1E 13DD 2800 and 2S 1E 13DD 2890. The two tax lots include 15 acres more or less and the property has been platted (*see* Def Ex A, item 3), but whether officially or unofficially is not clear. However, streets have been laid out by plaintiff and personal residences (referred to as "cabins" or "cottages" by the witnesses) have been built upon 42 of the "lots." It further appears that some of the personal residences were built by or for private persons upon lots leased from the plaintiff. The plaintiff always recognized that such lots and the accompanying improvements, used for private purposes, were taxable. The county assessor has maintained a "double" tax roll for Tax Lot 2800, the second part being designated "Tax Lot 2800 E-1," and for Tax Lot 2890. the second portion being designated as "Tax Lot 2890 E-1." Those portions of the property which the county assessor deemed taxable were included in the first accounts and those which were deemed to be exempt were placed in the second accounts on both the assessment and tax rolls.

The only witness for the plaintiff was its business manager, Cornelius F. McMenamy, of Milwaukie. He testified that parts of the tax lots were "broken into little building lots" and that 42 cottages had been constructed on the grounds. However, some indefinite number of years ago, the plaintiff entered into a policy of buying (when opportunity afforded) those improvements which had been placed upon its grounds by private individuals. It then used the cottages to house students of the plaintiff's Western Evangelical Seminary, located on property adjacent to the subject

property. (Property thus used became exempt from taxation under ORS 307.145.) The testimony was not clear but, at the time of trial, of the 42 cottages built on the grounds, apparently a little more than one-half were owned by the plaintiff, the rest by private persons.

The witness, Mr. McMenamy, was employed in September 1973 by the plaintiff as a business manager and assigned many duties, including the management of the subject property. He testified that, beginning in 1974, he finally became familiar with the "tax situation" and talked to an appraiser from the county assessor's staff who regularly performed the appraisal work with respect to plaintiff's conference grounds. The witness testified that he often inquired of this man as to the modus operandi for obtaining property tax exemption for the cottages purchased from the private persons. The appraiser's answers were not made clear to the court but, according to Mr. McMenamy, it seems that he was advised that no exemption could be allowed retroactively for such cottages. Exemption could be obtained for those cottages which had been purchased from private persons and were being used by seminary students of the plaintiff's Western Evangelical Seminary. Mr. McMenamy testified that, upon his oral statement of a purchase, the appraiser immediately brought application forms for the plaintiff's use. However, the witness, acting for the plaintiff, filed its first series of exemption claims in September 1975 (which could not be legally effective until the assessment date of January 1, 1976).

After establishing the procedure for exemption, the witness became interested in obtaining retroactive tax relief for some cottages and, on March 17, 1976, he wrote to the "County of Clackamas Assessors Office," in care of the appraiser above mentioned (Pl Ex 3), in which he called attention to another cottage having been purchased from a private owner, "so we herewith

file an application for property tax exemption to cover this unit." His letter continues:

"Thank you again for your splendid cooperation in the past—in dealing with the filing of these applications.

"Please consider another item. Because it is not possible to arrange retroactive exemption of taxes for our property, please ask whatever group responsible, if a final settlement could be determined for our back taxes. Including interest, they amount to $14,254.03. Please see how much of this may be forgiven."

It was inferred that this letter was never delivered to the county assessor or other official by the appraiser (who left the employ of the county assessor's office at a date not placed in the trial record). Having received no answer to the letter as of June of 1976, Mr. McMenamy telephoned to the assessor's office and was referred to Mr. George Malin, the chief appraiser. He talked to Mr. Malin about forgiveness of the indebtedness for taxes against those houses and lots found to be exempt but which had previously been subject to tax and on which taxes had been paid after title to the houses had been obtained by the plaintiff. Mr. Malin had not seen the McMenamy letter dated March 17, 1976, addressed to the assessor, in care of the appraiser, but he immediately mailed material to Mr. McMenamy to be used in filing a petition to the Department of Revenue. (Apparently Mr. Malin, on his own initiative, allowed a further exemption for some part of Tax Lot 2890 for the tax year 1975-1976. The legal basis for his action cannot be found in the record of this suit.)

A hearing on the petition was held by the Department of Revenue on January 20, 1977, at which time Mr. McMenamy and Mr. Malin appeared as witnesses. The Department of Revenue found that the petitioner's appeal sought a refund of property taxes collected for the tax years 1973-1974, 1974-1975 and 1975-1976. The department's opinion states:

"* * * Petitioner's witness, the manager of the conference grounds, argues that the Assessor's failure to

notify Petitioner of its eligibility for a tax exemption constitutes a continuing omission, and that the six-month period of limitations provided by ORS 306.520 [providing for an appeal upon petitioner's disagreement of an act of the county assessor] should be measured from the time Petitioner first learned of eligibility for the exemption. He then argues that while there is no legal provision for a retroactive tax exemption, the Department should refund the taxes collected in those prior years.

"Since the Assessor had no knowledge of Petitioner's eligibility for a tax exemption [as to the cottages known to Mr. McMenamy to be inhabited by seminary students], he had no duty to notify Petitioner of its failure to apply for an exemption. It follows that there was no applicable act or omission which would permit an appeal to the Department under ORS 306.520. Therefore, Petitioner's appeal must be dismissed."

This order, designated as No. VL 77-91, dated February 14, 1977, was duly appealed to the Oregon Tax Court and is the jurisdictional basis for this suit.

■■ At the trial as stated, Mr. McMenamy was the only witness for the plaintiff. His testimony was confusing and incomplete, but it is clear that he was relying upon the theory of equitable estoppel set out in *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967). In that case, while holding for the plaintiff-taxpayer, the court stated, 248 Or at 463-464, 435 P2d at 304:

"There are important caveats to the rule [allowing estoppel against the government in tax cases], however. *Schuster v. C.I.R., supra,* 312 F2d 317. The policy of efficient and effective tax collection makes the doctrine of rare application. It could only be applied *when there is proof positive* that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirements. * * *" (Emphasis supplied.)

This caveat could have been designed for this particular case. Mr. McMenamy stated that he did not

apply for exemptions, after contact with the county's appraiser, until September 1975. In court, when plaintiff's attorney asked: "Did he [the appraiser] discourage you from filing for this exemption?", the witness answered: "Well, it never went to that stage. * * *" He did not seek abatement of the taxes and a refund of the moneys paid for the past tax years until November 1976. His own testimony makes no pretense of anything but casual inquiries of the county's appraiser respecting abatement of the accumulated tax burden.

The confusion in the testimony in the record in this cause is illustrated by a statement by Mr. McMenamy that the appraiser

"* * * was very helpful, very friendly and informal. Any time I had a problem about another piece of property that we were going to acquire, he'd come out on the property right away, we'd look it over, and make a determination of it. * * *"

A moment later, the witness testified that the appraiser, "in several instances," had told him "at two different times two different things." Again, Mr. McMenamy testified that the uses of the subject property hadn't changed in 15 years but other positive statements were made by him of the changes in the leased property to exempt status. His testimony, throughout, is cloudy and often contradictory.

The court cannot find that the appraiser misled the plaintiff's agent at any time. It appears to the court that the only statement the appraiser definitely made was that he knew of no way in which plaintiff could obtain retroactive (as opposed to future) tax relief. To allow the defense of estoppel on this record would open the door to abuse.

█ The situation appears regrettable but the court finds positive testimony of the laches of the witness and no "proof positive" of a course of conduct attributable to the assessor's office that would bring the case within the rule of equitable estoppel in taxation utilized in *Hinson v. Dept. of Rev.,* 7 OTR 397 (1978);

*Cascade Manor, Inc. et al v. Dept. of Rev.,* 5 OTR 482 (1974), and other cases cited in those two. The application of the rule in the decisions to date has involved clear proof of an error in a tax exemption form or a continuing course of conduct admitted by an agent of the county assessor who was brought into court and subjected to examination.

The plaintiff herein did not sustain the burden of proof placed upon it under a theory of equitable estoppel or otherwise.

The order of the defendant is affirmed and defendant is entitled to its statutory costs and disbursements.