BERNARD SHEVACH, Judge Pro Tempore.
 

 Plaintiff has appealed from the Department of Revenue’s Order No. VL 78-447, executed on July 27, 1978, which sustained the decision of the Multnomah County Assessor
 
 *
 
 in the addition of a professional office building to the tax rolls as omitted property as of January 1, 1976, utilizing ORS 311.207 to 311.211 (1977 Replacement Part).
 

 The facts from which the controversy arises are the following:
 

 Concurrently with its construction of a hospital and in propinquity to it, plaintiff on July 22, 1974, commenced construction of a professional office building for the rental occupancy of physicians. The situs of the building was originally designated as Tax Lot 15 of Lot 6 of the Everglade Addition to Multnomah County, Oregon, and subsequently redesignated as Tax Lot 16 of Lot 6 of that addition.
 

 On July 31, 1974, by timely and appropriate application to the Multnomah County Department of Assessment and Taxation, plaintiff sought an exemption from ad valorem taxation pursuant to ORS 307.130 of 30 acres of land which would be utilized for both the hospital and the office building. ORS 307.130, herein referred to as the "charitable use exemption,” exempts from taxation, inter alia, property that is owned and actually and exclusively occupied or used
 
 *[383]
 
 by an incorporated charitable institution in the performance of its charitable work. Accompanying the exemption application was a letter written by plaintiff which purported to exclude the office building from the purview of the application as follows:
 

 "As you will note, although we are purchasing a 40 acre parcel, we are only using 30 acres for this facility, including the professional office building. However, we do understand that the professional office building is nonexempt. For that reason we are providing a legal description of the location and dimensions of that building which is to be excluded from our application.” (PI Ex 1.)
 

 On September 18, 1974, plaintiff was advised by the supervisor of the department’s tax exemption section that all of its property, including the tax lot on which the office building was being constructed, "qualify for exemption and will become 100% Nontaxable beginning 1974-75 under the provisions of ORS 307.130.” (PI Ex 2.) Trial testimony disclosed that the assessor’s office had denominated plaintiff’s exempted property as "tax lots” and that, in its lexicon, the office included within the intendment of the term "tax lot” not only the bare land of the lot but also all structures and improvements on the land. Accordingly, the office building received a charitable use exemption.
 

 Of singular import to the consideration of this case is the testimony of the person currently in charge of the exemption division of the Multnomah County Department of Assessment and Taxation. He averred at the trial that the county assessor was aware of plaintiff’s letter of July 31, 1974, with its information that a professional office building was to be built on the portion of the land the letter described and that, notwithstanding his knowledge, the assessor deliberately granted the building an exemption from taxation. The transcript of his testimony reads as follows:
 

 "Q. Are you aware that that application [for exemption] was accompanied by a legal description of — of the
 
 *[384]
 
 land area for the professional office building at the hospital?
 

 A. Yes, it was.
 

 Q. Are you also aware that in September of 1974 the assessor granted an exemption to the entire hospital site, which included the professional office building site? A. Yes.
 

 Q. Why did it grant an exemption to the entire site?
 

 A. This was a decision of the assessor at that time under the — under those particular circumstances.
 

 Q. Was the assessor aware of Mr. Combs’ letter of July 1974 [PI Ex 1]?
 

 A. Yes, he was.
 

 Q. And he decided that the property should be exempt in spite of the letter?
 

 A. For that time he did.
 

 i{4 ^
 

 Q. Why was it exempted in September 1974?
 

 A. Because it was a policy made by somebody from above.
 

 Q. Was it the assessor’s decision that it should be exempted anyway in spite of the use?
 

 A. At that — at that time.
 

 íjc :fi
 
 ^
 
 :fi
 

 Q. Even though he [the assessor] was aware that building was for medical offices for physicians at the hospital?
 

 A. He was aware that this was going to eventually be.”
 

 The assessor’s exemption decision, as the foregoing testimony indicates, cannot be categorized as inadvertent; it was a decision knowledgeably and consciously made with full cognizance of the salient facts.
 

 By stipulation entered in the record, by exhibits and by trial testimony, plaintiff and defendant agreed to the following facts:
 

 1. On January 1, 1976, the building, the construction of which commenced on July 22,1974, was incomplete, under construction, not used or occupied, and
 
 *[385]
 
 had never been used or occupied. The building was being constructed in furtherance of the production of income.
 

 2. At all revelant times, from and after its notice of September 18, 1974, until February 11, 1977, the Multnomah County Assessor listed the property (inclusive of the professional office building) on the assessment rolls as nontaxable.
 
 (See also
 
 Def Ex C.)
 

 3. On November 8, 1976, the assessor’s office notified plaintiff that the building would not qualify for exemption and invited plaintiff to appear before its exemption section no later than November 29,1976, to show cause why an assessment should not be made (Def Ex B). On December 22, 1976, notice of intent to add the land and building to the assessment and tax rolls as omitted property as of January 1, 1976, with a valuation of $1,500,000 for the building and $20,370 for the land, was sent by the assessor to plaintiff together with the opportunity to show cause why the correction should not be made (Def Ex C).
 

 4. On February 11, 1977, the assessor added the office building to the assessment rolls as omitted property as of January 1, 1976.
 

 ORS 307.330, herein referred to as the "construction exemption,” provides that a building in the course of construction on January 1 of a given year is tax exempt for that year upon compliance with certain statutory conditions and upon the submission to the assessor of documentary proof of such compliance on or before April 1 of the given year. (ORS 307.340.) Both plaintiff and defendant were in accord that the office building would have qualified for the construction exemption as of January 1, 1976, under the fact stipulation set out in 1,
 
 supra,
 
 except for the failure of the plaintiff to submit the requisite documentary proof to the assessor on or before April 1, 1976, although such proof in fact existed.
 

 
 *[386]
 
 Since the assessor had granted a charitable use exemption to the building under ORS 307.130, so plaintiff testified, the plaintiff had no reason to apply for a construction exemption under ORS 307.330; if, however, a charitable use exemption had not been granted, the plaintiff testified that it would have examined and investigated alternative exemption statutes and would have timely availed itself of the construction exemption. On February 2, 1977, plaintiff submitted to the assessor’s office a construction exemption application in an effort to cancel the January 1, 1976, building assessment. This application was subsequent to the notice of December 22, 1976, of the assessor’s intent to add the building to the rolls as omitted property and prior to its addition as omitted property on February 11, 1977. The assessor denied the application because it had not been submitted before April 1, 1976.
 

 For purposes of this opinion, it will be assumed (without, however, deciding) that the revocation of the prior charitable use exemption, consummated by the addition of the office building to the rolls as omitted property, was legally correct; and it will be further assumed that the grant of this exemption by the assessor was predicated on an error of law and was,
 
 pro tanto,
 
 a misrepresentation.
 

 From the context of the foregoing facts, the issue to which the court must address itself is presented: should the assessor be estopped from adding the professional office building to the assessment and taxation rolls of Multnomah County as of January 1,1976?
 

 The doctrine of quasi estoppel (or equitable estoppel) in tax cases is recognized by the Oregon judiciary. Under its aegis, in some situations taxpayers receive protection from monetary loss that reliance on misinformation or misrepresentation by taxing authorities might otherwise occasion. In the case of
 
 Johnson v. Commission,
 
 2 OTR 504 (1967), and the appeal therefrom,
 
 Johnson v. Tax Commission,
 
 248 Or 460,
 
 *[387]
 
 435 P2d 302 (1967), the equitable estoppel doctrine in Oregon as applied to a tax case was first formulated and invoked. In those cases, to secure a cancellation of personal property assessments on automobiles in the possession of a car dealer, the plaintiff by statute was required to file an information form in the assessor’s office before May 15 of the year involved, although in prior years the relevant statute allowed the filing to occur on or before June 6. The assessor mailed to the plaintiff three forms, one of which incorrectly stated the prior filing date of June 6, although the other two forms correctly set forth the May 15 date. Plaintiff having relied on the erroneous date and having filed his claim after May 15, the assessor denied the cancellation. The Supreme Court, holding that the assessor was estopped to deny the cancellation, enunciated the following tenet:
 

 "* * * The policy of efficient and effective tax collection makes the doctrine [of estoppel] of rare application. It could only be applied when there is proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *” (248 Or 460, 463-464, 435 P2d 302, 304 (1967).)
 

 In
 
 Pilgrim Turkey Packers v. Dept. of Rev.,
 
 261 Or 305, 310, 493 P2d 1372, 1374 (1972), the Oregon Supreme Court estopped the assessor from denying a processor’s exemption to the plaintiff which had filed its exemption claim with the assessor after the statutory deadline, on the basis that the exemption claim form prepared by the State Tax Commission (now the Department of Revenue) was ambiguous in its instructions concerning the date when, and the place where, the form was to be filed. In reaching its decision, the court specificially held:
 

 "The ambiguous nature of the form and the instructions were enough to mislead a reasonable person. * * *”
 

 
 *[388]
 
 In
 
 Cascade
 
 Manor,
 
 Inc. et al v. Dept. of Rev.,
 
 5 OTR 482 (1974), the assessor, from the inception of the applicable statute, gratuitously supplied exemption forms to the plaintiff for two consecutive years with the result that the plaintiff timely filed the forms and obtained property tax exemptions. In the third year, the assessor’s office, through admitted oversight, did not mail the form and the plaintiff filed the form only after the statutory deadline had passed. The assessor denied the exemption for that year. Although the assessor’s office had no duty to send out such forms, the court estopped the assessor from denying the exemption on the ground that the plaintiffs had come to rely upon the procedure followed by the assessor in the first two years and that the plaintiffs reasonably relied thereon. In the course of its opinion, this court determined, based upon its interpretation of Oregon Supreme Court rulings, that only the three following elements are necessary to establish equitable estoppel: (1) that there must be misleading conduct on the part of an official; (2) that there must be reliance in good faith upon the conduct of the party estopped; and (3) that there must be injury to the party claiming estoppel.
 

 In
 
 Hinson v. Dept. of Rev.,
 
 7 OTR 397 (1978), the assessor continued to deal with the plaintiff’s representatives who were an attorney and certified public accountant, relative to the removal by the assessor of a special farm use assessment, even though the time for an appeal by the plaintiffs to the Department of Revenue from the assessor’s removal action had lapsed long since. The court held that the assessor was estopped from claiming that the plaintiff failed to appeal within the statutory time and further held that the department had jurisdiction to consider the issue of removal of the farm use classification. The basis of the court’s opinion was expressed as follows:
 

 "* * * It is improper for the assessor to lead a taxpayer to believe, as in this case, that further dealings with the assessor, rather than an appeal to the Department of
 
 *[389]
 
 Revenue, can alter the assessor’s action. When the assessor does mislead a taxpayer, the assessor will be estopped from claiming that the taxpayer failed to appeal within the statutory six-month period. * * *” (7 OTR 405.)
 

 The foregoing decisions may be epitomized as validating the use of the doctrine of equitable estoppel whenever a taxing authority is proved to have engaged in grossly misleading conduct upon which a taxpayer in good faith relies to his detriment. The doctrine of equitable estoppel, as set out in the
 
 Cascade Manor
 
 and
 
 Hinson
 
 cases,
 
 supra,
 
 appears to reflect the Oregon Supreme Court’s latest opinions in this area of the law.
 

 It is the view of the court that the assessor’s office unequivocally misled the plaintiff by the letter of September 18, 1974, wherein it notified the plaintiff that the tax lots, which included the office building under construction, "qualify for exemption and will become 100% Nontaxable beginning 1974-75 under the provisions of ORS 307.130.” This decision was not proclaimed in an ambience of nondisclosure or extenuating ambiguity; to the contrary, the decision responded to plaintiff’s exemption application letter of July 31, 1974, in which the plaintiff pellucidly stated that "we do understand that the professional office building is nonexempt. For that reason we are providing a legal description of the location and dimensions of that building which is to be excluded from our application.” Nor can the assessor’s decision be characterized as "inadvertent” and thus explained away. The uncontradicted testimony from an employee of the assessor’s office reveals that the assessor had a full awareness of the disclosures in plaintiff’s letter of July 31, 1974, and yet exempted the office building in September of 1974 as a matter of intended policy. Under these circumstances, there is no rational basis, in the opinion of the court, to conclude that the plaintiff should not have relied on the assessor’s notice of a tax exemption for the office building.
 

 
 *[390]
 
 The assessor’s office for a period of three years and two months (that is, from September of 1974 to November of 1977) did nothing to contravene its exemption grant. Hence, a seeking by plaintiff of a construction exemption as of January 1, 1976, would have been a redundancy and the plaintiff justifiably did not engage in this apparently meaningless exercise. Since plaintiff and defendant agree that the construction exemption was available to plaintiff, and since plaintiff testified that it would have inquired into the exemption availability but for the fact that it was already the seeming recipient of a charitable use exemption, the plaintiff would be severely prejudiced and damaged by the assessor’s conduct in subsequently assessing its building unless it may avail itself, by aid of the doctrine of equitable estoppel, of the construction exemption as of January 1, 1976, although the construction exemption claim was filed after the statutory time had elapsed. The requisites of equitable estoppel delineated by the Oregon Supreme Court and by this court are fully met, unless defendant’s following two points of argument, which will now be considered, should prevail.
 

 Firstly, defendant contends that the decision of
 
 Freightliner Corp. v. Dept. of Rev.,
 
 275 Or 13, 20, 21, 549 P2d 662, 665, 666 (1976), precludes the applicability of estoppel to the case at bar. In
 
 Freightliner,
 
 the assessor’s office, having first granted to the plaintiff in the year 1960 an exemption of certain personal property under the Oregon Free Port Act, ORS 307.810 et seq., subsequently reversed itself and denied a free port personal property exemption for the year 1967 on the ground that the plaintiff’s property did not qualify for that exemption. The denial was affirmed by the Oregon Supreme Court in
 
 Freightliner Corp. v. Dept. of Rev.,
 
 258 Or 478, 483 P2d 1307 (1971). Subsequent to the 1971
 
 Freightliner
 
 decision, the assessor added the personal property he had formerly exempted to the assessment and taxation rolls as omitted property for the only two open years under the omitted property
 
 *[391]
 
 statute; namely, 1965-1966 and 1966-1967. Plaintiff objected to the omitted property assessment by advocating that the omitted property statute does not allow the assessor to levy an omitted property assessment upon the denial of a previously authorized exemption. The Oregon Supreme Court sustained the assessment, offering the following rationale:
 

 "In its original opinion, the tax court determined that ORS 311.207 requires the assessor to assess taxable property when, for 'any cause,’ that property has been omitted from assessment and taxation. 'Any cause’ was found to include those situations in which the property was omitted by the assessor under a mistake of law as well as a mistake of fact. In this case, the assessor may have been mistaken when he originally granted the exemption to Freightliner in 1960. However, this mistake was corrected in 1967 and, after the decision of this court in
 
 Freightliner Corp. v. Dept. of Rev.,
 
 258 Or 478, 483 P2d 1307 (1971), the assessor acted correctly in asserting the assessment for the previous years. * * *” (275 Or 13, 21, 549 P2d 662, 666 (1976).)
 

 The present opinion is in full accord with the premise of
 
 Freightliner, supra,
 
 that the assessor may levy an omitted property assessment upon the denial of a previously authorized exemption. However, in
 
 Freightliner,
 
 there was no act of the assessor which led the taxpayer to forego application for tax exemption under another statute. When the elements of equitable estoppel themselves impel the grant of a different statutory exemption from the one erroneously and formerly granted, as here, there is then no omitted property left upon which the omitted property statute may operate. Thus, an inviolate consistency with the
 
 Freightliner
 
 decision remains: this court is simply allowing estoppel to fulfill its historic juridical function of causing legal strictures to yield to the insistent demands of equity and good conscience.
 

 Secondly, defendant argues that the charitable use exemption of physicians’ offices owned by hospitals in Oregon has long been settled adversely to the seekers
 
 *[392]
 
 of that exemption and, as defendant asserts: "In fact, any one advising the hospital, and it is presumed that it [plaintiff] had adequate legal counsel, would have known that fact.” (Defendant’s Memorandum re Taxability of Hospital-Related Medical Office Buildings, at 1.) Presumably, defendant concludes that plaintiff, therefore, had no right to rely on the assessor’s charitable use exemption. In support of its position, defendant cites, among other precedents, the case of
 
 Albany Gen. Hospital v. Dept. of Rev.,
 
 6 OTR 446, 447, 448, 452 (1976), affirmed by the Oregon Supreme Court in 277 Or 727, 561 P2d 1029 (1977). In that case, the plaintiff, a tax-exempt charitable corporation within the provisions of ORS 307.130, leased a wing of its hospital to Linn County, Oregon, for the use of the county’s health department, a clinic and other health-related purposes. This court determined that the leased space was utilized for county public health activities, formerly housed in the courthouse, including vaccination of preschool children, an alcoholic detoxification and counseling center, and a venereal disease control clinic. The court further decided that there was no substantial evidence that the county’s program aided the plaintiff’s hospital work. In finding that the county’s use of the leased property did not substantially contribute to the furtherance of the hospital’s goals, the court denied the grant of a charitable use exemption to the hospital wing. Thus, the comb in
 
 Albany Gen. Hospital, supra,
 
 held that a causal nexus must exist between the use of one portion or parcel of property and the substantial furtherance of the goals of a different property, which has been awarded a charitable use exemption, in order that the former property may also be the beneficiary of that exemption. This principle, with some semantic variation, has been consistently applied by the Oregon judiciary.
 
 See Mult. School of Bible v. Mult. Co.,
 
 218 Or 19, 22, 23, 37, 343 P2d 893, 895, 901 (1959);
 
 YMCA v. Dept. of Rev.,
 
 268 Or 633, 635-639, 522 P2d 464, 465, 466 (1974).
 

 Analyses of the cases cited disclose that the
 
 *[393]
 
 amorphous language in which the criteria for exemption are expressed can be molded into meaningful form only by the specific facts of particular cases. These facts with their nuances and colorations must be filtered through the perception of the decider before a judgment may be rendered. The result may well not be monolithic determinations, but rather determinations in which reasonable persons may reasonably differ. To urge that the plaintiff should be sufficiently omniscient to know that the assessor was wrong in his grant of a charitable use exemption to the office building is to reduce the art of perceptive judgment to a predictable automatic function.
 

 Moreover, there is no record in this case relating to the use of the medical office building other than the fact that it was rented to physicians for their occupancy. In the absence of a record, this court cannot adjudicate the validity of defendant’s view that the plaintiff should have known to a certitude that the use would not qualify for a charitable exemption. The mere fact of the rental of the building to physicians does not in and of itself constitute a disqualification. If that were true, this court or the Oregon Supreme Court would have automatically disqualified the plaintiff in
 
 Albany Gen. Hospital, supra,
 
 from a charitable use exemption because it did lease the property in question. However, the disqualification did not proceed on this ground but rather was predicated on the fact that the usage by the lessee did not substantially contribute to the furtherance of plaintiff’s charitable goals.
 
 See also YMCA v. Dept. of Rev., supra,
 
 at 638, 639, in which a charitable use exemption was granted plaintiff on office space it rented to a tenant when the facts demonstrated that the rental occupancy and use were integral to the charitable goals of the YMCA.
 

 Also implicit in this position of the defendant is the postulate that the plaintiff in this case should have borne the onus of correcting the legal position of the assessor, or else should bear the financial consequences of added taxation for not having done so. The
 
 *[394]
 
 plaintiff is not the legal advisor of the assessor. On the contrary, the defendant has that duty as ORS 305.110 points out:
 

 "The Department of Revenue shall construe the tax and revenue laws of this state whenever requested by any interested person or by any officer acting under such laws and shall instruct such officers as to their duties under such laws. Such officers shall submit all questions arising with them which affect the construction of tax and revenue laws of the state to the department.”
 

 If the assessor does not submit questions affecting the construction of tax laws to the defendant for its opinion, can the defendant then be heard to say that the duty of issuing such a construction devolves upon the plaintiff? This court thinks not; and this is particularly true under the facts of this case where the assessor was fully advised by the plaintiff of its understanding that the office building was nonexempt but the assessor nevertheless manifested his disagreement by deliberately exempting it for a period of three years and two months. The responsibilities of the assessor, who is charged by statute with the administration of a public office, cannot be avoided by shifting the burden of their nonperformance to the plaintiff at the plaintiff’s expense.
 

 Plaintiff has alleged other bases for relief in its complaint as second, third and fourth counts. To the extent that these counts meritoriously request relief, this opinion has already granted it. In other allegations, the counts are dismissed because they are not supported by the evidence.
 

 Defendant’s Order No. VL 78-447 shall be set aside and held for naught. The assessor, a party to the proceeding before the defendant which resulted in defendant’s Order No. VL 78-447, will be estopped from claiming that the plaintiff failed to apply for a construction exemption prior to April 1, 1976, under ORS 307.330 and its construction exemption claim filed on February 2, 1977, which was after the receipt
 
 *[395]
 
 on December 22, 1976, of the assessor’s notice of intent to add the medical office building to the rolls as omitted property, is granted. The omitted property assessment of the building as of January 1, 1976, shall be cancelled. The Director of the Department of Assessment and Taxation, Multnomah County, shall amend the assessment and tax rolls in conformity with this opinion. If taxes have been paid by the plaintiff in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be refunded to the plaintiff by the Board of County Commissioners of Multnomah County, Oregon, pursuant to ORS 311.806 and 311.812.
 

 Plaintiff is entitled to its statutory costs and disbursements.
 

 *
 

 Multnomah County has a Department of Assessment and Taxation; however, throughout the pleadings, the chief executive officer is referred to as the Multnomah County Assessor.