# WILLIAM M. MEEKS, JR.
### *v.*
# DEPARTMENT OF REVENUE

Paul Nolte, County Counsel for Douglas County, Roseburg, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 31, 1977.

CARLISLE B. ROBERTS, Judge.

The plaintiff, County Assessor for Douglas County, Oregon, appealed from the defendant's Order No. VL 76-87, dated February 27, 1976, in which the department reinstated a special assessment for farm use (described in ORS 308.370) with respect to land owned by David and Barbara Putnam in the tax year 1974-1975.

In August or September 1973, the Putnams purchased three contiguous 20-acre parcels of real prop-

erty (identified in the county assessor's records as Assessor's Account Nos. 11564.17, 11600.15 and 11600.16) from B. Bradley Rattner. Mr. Rattner originally owned about 900 acres on which he had grazed cattle for many years, but in recent years he has been selling off small parcels. However, at the time of sale to the Putnams, Mr. Rattner's whole property was assessed at farm use value and this classification was carried over on the assessment and tax rolls as applicable to the property purchased by the Putnams.

Mr. Putnam testified that he had learned from the seller that the property was in farm use and he hoped to continue that use. Soon after purchase of the property, the Putnams sought advice as to the best use of the land, discussing the question with representatives of the Soil Conservation Service of the U. S. Department of Agriculture. They were advised that 48.95 acres should be used for timber production and only the remainder should be used for farming. On September 10, 1973, Mr. Putnam entered into a "conservation understanding" with the Soil and Water Conservation District of South Douglas County to obtain assistance in using the "land within its capabilities" and "to treat it according to its needs." Since the purchased property had no water of its own, no cattle were grazed upon the property from the time of its purchase by the Putnams until January 1, 1974, the assessment date, but the Putnams had installed $2,000 worth of fencing, cleaned out blackberries and rose bushes, and fertilized and seeded clover and fescue on the property which was suitable for farm use.

On February 14, 1974, the Soil and Water Conservation District drafted and submitted a plan of soil classes, slope, and other information indicating that reforestation was best for approximately 50 acres and that the remainder should be used for hay and stock. The Putnams found springs and piped water for development of the farm area and future homesite.

In April 1974, the taxpayers were given a notice,

pursuant to ORS 308.280, advising them of increased property assessments, and this notice, incidentally, showed the land to be classified as in farm use for the tax year 1974-1975. But in August 1974, the Putnams received a letter from the Douglas County Assessor, under date of August 8, 1974, which cited ORS 308.395 and stated: "* * * The accounts listed below [the Putnams' 60 acres] were disqualified because the land is no longer being used as farm land."

After consulting the assessor's office and learning that the board of equalization had no jurisdiction in the matter, the Putnams, on August 19, 1974, wrote to the Department of Revenue for information and, on October 25, 1974, filed an appeal with the defendant, seeking to set aside the county assessor's action of August 8, 1974. After a hearing on November 6, 1975, the Department of Revenue affirmed the assessor with respect to the 48.95 acres of timberland* but, convinced that the Putnams' intention to farm was bona fide and was sustained by their activities, held that "the 10.75 acres of farm land, * * * should be restored to farm-use assessment for the tax year 1974-1975."

In its complaint, the plaintiff states that the department's order with respect to the 10.75 acres of farmland should be set aside and held for naught "because no evidence exists to support the finding that David and Barbara Putnam employed these 10.75 acres for the purpose of obtaining a profit in money."

Based on the total testimony, it appears to the court that there was some reason to justify the disqualification of the subject property for farm use for the assessment date of January 1, 1974, but the question is raised, when was it legally "disqualified"?

ORS 308.370(3) reads:

"The entitlement of farm land to the special assessment provisions of this section shall be determined as of January 1. However, if land so qualified becomes dis-

_____
*No issue as to the tax treatment of this acreage was presented to this court.

qualified prior to July 1 of the same year, it shall be assessed at its true cash value as defined by law without regard to this section. *If the land becomes disqualified after July 1, its assessment for that year shall continue as provided in this section."* (Emphasis supplied.)

ORS 308.390(1) provides, upon application, a county assessor shall assess land for farm use "* * * until the land becomes *disqualified* for such assessment by: * * * (c) *Removal of the special assessment by the assessor* upon the discovery that the land is no longer being used as farm land; * * *." (Emphasis supplied.)

ORS 308.395 provides:

"(1) * * * whenever land which has received special assessment as farm use land * * * thereafter becomes disqualified for such assessment, the assessor shall notify the owner thereof * * *."

A witness for the county assessor, who had been engaged in farm appraisals for 20 years prior to his retirement from the office of the county assessor in May 1975, testified that the procedure to disqualify farmland, in the office of the Douglas County Assessor, involved the inspection of the property; consultation with the owners, when possible; the conclusion by the farm appraiser that the land was not being used for production; recommendation by the appraiser to the assessor; the mailing of an informal notice to the property owners to give them opportunity to be heard (not required by statute); (and then, presumably, the determination by the county assessor of nonuse and mailing of the statutory notice to the owners as required by ORS 308.395—but the witness did not specifically testify on these last two points).

The county could not prove the informal notice was mailed and Mr. Putnam testified it was never received. The county's witness agreed that the letter mailed by the office of the county assessor as of August 8, 1974, was not a mere "information letter" to the owners but the actual letter of disqualification. Another witness for the county assessor recognized

that disqualification after July 1 would allow the special use assessment to continue for the tax year in question but he believed that the decision to disqualify had been made by the assessor prior to July 1. However, the first witness of the assessor testified that the official change of the roll was made on July 8, 1974. This testimony was not disputed.

■■ A consideration of the provisions of ORS 308.370, 308.390 and 308.395 leads the court to the conclusion that the change in the assessment roll must actually be made before July 1 if it is to be effective in the immediately following tax year beginning July 1. Recommendation by the assessor's staff, made during the assessment period of January 1-June 30, that specific property be disqualified may be a necessary step in the process of disqualification. However, the actual change of the roll by the county assessor or his duly authorized agent is the essential overt act which proves the assessor's exercise of his judgment and establishes the disqualification as having actually occurred. Lacking such change in the public records, it is impossible to make the last sentence of ORS 308.370(3) effective. Written notice of the disqualification must be given immediately thereafter to the property owner.

The court concludes that the 10.75 acres of the subject property, as described in the defendant's opinion and order, was not disqualified as farm use land before July 1, 1974, and therefore the assessment for that year must be continued as provided in ORS 308.370(3).

Defendant's Order No. VL 76-87 is affirmed. The Assessor and Tax Collector of Douglas County shall amend the assessment and tax rolls as required by this decision. If taxes have been paid by the Putnams in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be refunded to the taxpayers, David and Barbara Putnam, by the Board of County Commissioners of Douglas

County, Oregon, pursuant to ORS 311.806 and 311.812.