# IN THE TAX COURT OF THE STATE OF OREGON

## Glen D. MARK

*v.*

## DEPARTMENT OF REVENUE

(TC 4071)

Teri L. Powers, Beaverton, represented Plaintiff (taxpayer).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Decision for Defendant rendered May 26, 1998.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals from Defendant's (department) opinion and order, which held that taxpayer's land was disqualified from special farm use assessment. The opinion and order also found that the assessor, who failed to place additional taxes on the 1991-92 tax roll, could now correct the roll as a clerical error. Taxpayer contends that the land was never properly disqualified and, therefore, no additional taxes may be placed on the roll as a correction of a clerical error. The matter is before the court on cross motions for summary judgment.

## FACTS

The legal history for this dispute is longer than most. The land in question is located on Sauvie Island, in Columbia County, and is zoned for agricultural use. In October 1989, the former owner applied for a conditional use permit. Under the Columbia County ordinances, a conditional use permit could be granted only on condition that the land was disqualified from special farm use assessment. However, due to an apparent breakdown in communications within the county,

the conditional use permit was issued, but the land was not disqualified from special assessment.

In February 1990, taxpayer purchased the property and later obtained a permit to place a mobile home on it. The issuance of the permit alerted the assessor to a change in the use of the land. On April 23, 1991, the assessor gave taxpayer written notice of his intent to disqualify the land from special assessment. The letter indicated that additional back taxes in the amount of $9,936.15 would be added to the roll. The letter also advised taxpayer that he had 90 days to appeal from this action. Taxpayer appealed to the department, contending that he was not liable for the back taxes. The department upheld the assessor, and taxpayer appealed to this court.

In this court, taxpayer contended that because he was a bonafide purchaser and the error was created by the county, he was not liable for the additional taxes. After a trial, the court held that taxpayer was liable for the back taxes. *See Mark v. Dept. of Rev.*, 12 OTR 369 (1993). Taxpayer appealed that judgment to the Oregon Supreme Court. While his appeal was pending, he learned that the additional taxes had never been placed on the assessment roll. As a result, taxpayer moved the Supreme Court to dismiss his appeal as moot, which the court did. In granting the motion, the Supreme Court directed this court to vacate its judgment.

On December 6, 1993, the assessor gave taxpayer written notice of his intent to correct the roll. The notice indicated that although the assessed value of the property had been changed, the additional taxes had not been placed on the roll. Accordingly, the assessor set a time for a hearing where taxpayer could show cause why the additional taxes should not be placed on the roll. On February 8, 1994, after the hearing, the assessor notified taxpayer that the additional taxes would be placed on the roll and that he had 90 days to appeal from that action.

In response, taxpayer again appealed to the department, now contending that the property had not been properly disqualified. The department issued an opinion and order, holding that: (1) the disqualification had been finally

determined in the prior case and was not open to question, and (2) the only issue that could be considered was whether the additional taxes could be added under ORS 311.205.[1] Taxpayer appealed from that opinion and order to this court.

## ANALYSIS

The court finds that Plaintiff is not barred by issue preclusion from questioning the disqualification of the property. It is apparent from reading the department's first opinion and order and the decision of this court that everyone concerned, including taxpayer, erroneously assumed that the assessor had disqualified the property. In view of that assumption, neither the department nor this court examined or determined whether disqualification had taken place. Rather, the issue was whether the taxpayer was liable for the additional taxes. Accordingly, this court must now consider whether the land was properly disqualified.

■ In a prior case, this court determined what constitutes disqualification.

> "* * * [T]he actual change of the roll by the county assessor or his duly authorized agent is the essential overt act which proves the assessor's exercise of his judgment and establishes the disqualification as having actually occurred." *Meeks v. Dept. of Rev.*, 7 OTR 113, 117 (1977).

The court has examined the documents that provide the factual basis for the parties' motions for summary judgment. The assessor's letter dated April 23, 1991, only indicated an intent to disqualify the land. Actual disqualification did not occur until the assessor changed the roll. Although the additional taxes were computed in April 1991, the assessor's journal voucher indicates that the roll was changed on July 1, 1991. Taxpayer's tax statement for the tax year beginning July 1, 1991, shows a change from special farm use value to real market value.

Based upon the above documents, the court finds that the land was disqualified for special assessment as of July 1, 1991. Although the additional taxes were not added to the roll as they should have been, that does not mean the

---

[1] All references to the Oregon Revised Statutes are to 1989.

land was not disqualified. Rather, the land was disqualified when the assessor changed the value on the roll.

■     Taxpayer contends that the assessor did not notify him after he changed the roll that the land was disqualified. Such notice is required by ORS 308.399(1), which states, in part:

"* * * [W]hen land which has received special assessment * * * thereafter becomes disqualified for such assessment under ORS 308.397, the assessor shall notify the owner thereof and there shall be added to the tax extended against the land * * * [the additional taxes]."

ORS 308.397 specifies that land becomes disqualified by:

"(1)   Removal of the special assessment by the assessor upon the discovery that the land is no longer being used as farmland; or

"(2)   Removal of the land from any exclusive farm use zone."

Here, the assessor removed the special assessment upon discovery that the land was no longer being used as farmland. Accordingly, the assessor was required to notify taxpayer. The assessor did give taxpayer notice, but not until December 6, 1993. In that notice, the assessor admitted his oversight and failure to assess the back taxes. He expressed his intent to add the $9,936.15 to the 1991-92 tax roll as a correction of a clerical error. The notice set a time for a show cause hearing as required by ORS 311.207. Thereafter, on February 8, 1994, the assessor informed taxpayer of his decision to add the back taxes to the roll.

■     In all of the above, the assessor failed to comply with the department's rules in major points. OAR 150-308.399(1) provides, in part:

"* * * Following the disqualification, the assessor shall mail notice to the owner or person claiming special assessment on or before July 7. Both the corrected assessment roll and the notice to the person claiming special assessment shall state:

"(a)   That the subject property has been disqualified from special farm land assessment;

"(b)   The market value to be placed on the assessment roll for the current year; and

"(c)   The additional tax liability that will be imposed, or if the land is not used for another use the amount of the potential additional tax liability.

"(2)   *Changing Special Assessment; Appeal Rights*: The notice of disqualification shall provide the owner notice of the provisions of ORS 321.960 and of the appeal rights the owner has."

None of the notices given to taxpayer indicated the market value to be placed on the current roll or gave the owner notice of the provisions of ORS 321.960. Neither of the notices following disqualification were given prior to July 7.

Taxpayer contends that these failures prevented the land from being disqualified. Taxpayer also argues that the assessor used inconsistent values that confused taxpayer and placed him at a disadvantage.

The court notes that administration of the property tax system was complicated, at least temporarily, by the passage of Measure 5 in the November 6, 1990, general election. That initiative measure added section 11b to Article XI of the Oregon Constitution. The measure, which became effective immediately, was out of alignment with the then existing property tax statutes. The legislature, which met in January 1991, responded by enacting Oregon Laws 1991, chapter 459. After enormous effort, amending or repealing over 460 sections of the laws, the legislature realigned the statutes with the constitution. One of the most notable changes relevant here is the change in assessment date from January 1 to July 1. All of the changes were made effective for the tax year beginning July 1, 1991.

Knowing that background, the values used in the documents submitted in this case appear consistent although not entirely explainable. To begin at the beginning, the subject property was assessed for special farm use assessment as of January 1, 1991, at $1,360. It is not known how or when the assessor discovered that the land was no longer being used for farm use. It does appear that the potential additional taxes were calculated as of April 19, 1991. The document

entitled "Special Assessment Disqualification" has a hand-written note on it that reads: "4-19-91 Do not send letter, Tom has & will send letter of disq." That document used a market value of $56,890 in calculating the additional taxes that would be due upon disqualification. Where that value came from is not disclosed in the record. However, it is likely the assessor's estimate of true cash value for the property as of January 1, 1990, which was the "last year * * * in which such farm use assessment was in effect for the land." ORS 308.399(1).

The Assessor's Journal Voucher shows a real market value for the property as of July 1, 1991, of $67,500 for the land and $8,010 for improvements, for a total market value of $75,510. Assuming the assessor believed he had disqualified the property as of April 23, 1991, the $75,510 would represent the estimated real market value of the property as of January 1, 1991. However, the new legislation changed the assessment date from January 1, 1991, to July 1, 1991. Thus, the assessor had to estimate a new real market value for the new assessment date. Based on the information contained on the Appraisal Card, the assessor did that by applying an 8 percent trend factor to the January 1, 1991, market value. That results in a market value for the property of $72,900 land; $8,700 improvements; or a total of $81,600. These trended values are the assessed values that appear on tax-payer's property tax statement for the tax year "7/1/91 to 6/30/92."

██ The assessor admits that the notices did not include "the market value to be placed on the roll for the current year" (after disqualification) as required by OAR 150-398.399(1)(b). Because disqualification removes special assessment for the year in which the land became disquali-fied, the assessed value is effectively changed retroactively. To afford the taxpayer an opportunity to contest the retroac-tively estimated market value, the assessor must notify the taxpayer of that value in the notice of disqualification. The taxpayer then has 90 days to appeal under ORS 305.275.

Failure to give that notice deprives the taxpayer of information needed to determine whether to appeal. How-ever, due to the change in the assessment year from a calen-dar year to a fiscal year, the taxpayer here was not harmed.

When the assessor first acted to disqualify the land in April 1991, the assessment year was still a calendar year. An appeal of the January 1, 1991, true cash value under ORS 305.275 would have been for the 1991-92 tax year. With the change in the assessment date, the date for disqualification became July 1, 1991. The tax statement for the 1991-92 tax year was provided to taxpayer in ordinary course and taxpayer had an opportunity to appeal the assessed values under ORS 309.100. The only difference in result is that taxpayer had to appeal first to the county board of equalization before appealing to the Department of Revenue. The court does not consider that difference or the slight delay in time to be significant.

The assessor also admits that he did not give the notices and information required by ORS 321.960. These requirements are intended to allow the taxpayer to qualify the property for special assessment under a different law and thereby avoid the additional taxes that are incurred upon disqualification. However, the statute's requirements must be considered in the context of what occurred.

Taxpayer's predecessor in interest requested a conditional use permit in order to place a dwelling on the subject property. Under ORS 215.236(2), approval of a dwelling in an exclusive farm use zone land that has been receiving special farm use assessment "shall not" be granted:

"[W]ithout evidence that the lot or parcel upon which the dwelling is proposed has been disqualified for valuation at true cash value for farm use under ORS 308.370 *or other special assessment under ORS 308.765, 321.352, 321.730 or 321.815.*" (Emphasis added.)

■■ ORS 215.236(4) requires the owner of the land to notify the assessor that the land is no longer being used for farm use and *request disqualification,* which was not done. Failure to comply with that statute, whether by taxpayer or his predecessor in interest, cannot afford taxpayer greater remedies than if he had complied. If taxpayer had complied with the statute, then no notice would have been given under ORS 321.960, because it is not applicable where taxpayer requests disqualification. If the land cannot qualify for special assessment under one of the laws mentioned in ORS

321.960(2), then the failure of the assessor to give the notice and the information required by that section is inconsequential.

In conclusion, the court finds that the subject property was disqualified from special farm use assessment on July 1, 1991. The additional taxes may not be added to the assessment roll before the following tax year (1992-93). ORS 308.399. Based on the record before the court, the assessor will have to comply with the notice and show cause provisions of ORS 311.205 before making the appropriate entry on the tax roll.

■ Taxpayer contends that the additional taxes are not subject to correction as a clerical error. He believes that disqualification involves a change in valuation judgment and ORS 311.205 may not be used to correct a change in valuation judgment. He argues that "it is impossible to determine what was actually contained in the record on any given date or when items were made a part of the record." The court finds that the documents, which are confusing to taxpayer, are clear to the court. The change in amounts from special farm use to real market value and the resulting calculation of additional taxes has not changed since the assessor's first notice in April 1991. The action of placing the additional taxes on the roll does not require the exercise of any valuation judgment and is correctable as a clerical error under ORS 311.205. Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted, subject to the condition that the first year the additional taxes may be added to the roll is 1992-93, and

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied. Costs to neither party.