# IN THE OREGON TAX COURT

## DOUGLAS COUNTY ASSESSOR
*v.*
## DEPARTMENT OF REVENUE
## NICKEL MOUNTAIN RESOURCES CO.,
*Intervenor*
(TC 3134)

Donald A. Dole, Dole, Coalwell, Clark & White, P.C., Roseburg, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered June 12, 1992.

**CARL N. BYERS, Judge.**

Plaintiff appeals from an opinion and order finding intervenor's property in four accounts exempt as "inventory" under ORS 307.400. Plaintiff and intervenor stipulated to the value of the property in each account as of January 1, 1988. They also stipulated to some facts and a trial was held on the disputed facts.

## FACTS

M. A. Hanna Company and Hanna Nickel Smelting Company (collectively Hanna) operated a nickel mine, ore processing and smelter operation in Douglas County for approximately 30 years. In August, 1986, Hanna ceased operation and in January, 1987, decided to permanently close and liquidate the operation. A subsidiary of Universal Consolidated Companies, Inc. (Universal), a recognized dealer in used mining equipment, contacted Hanna regarding a possible bulk purchase of the facility. After some negotiations, Hanna agreed to sell. Universal formed Nickel Mountain Resources Co. (intervenor) as a wholly owned subsidiary. Although both Universal and intervenor were parties to the purchase agreement collectively as buyer, title to the property was taken in the name of intervenor. The sale was closed on November 30, 1987. Under the purchase agreement, intervenor acquired all of Hanna's interest at the site except mining leases.

Prior to Universal coming on the scene, Hanna had begun to sell off some of the equipment. Once Universal became interested, it also began to solicit sales of the equipment. The purchase price was to be adjusted for any equipment either Hanna or intervenor sold prior to closing. Substantial sales took place in 1987 and 1988.

There is some dispute as to what machinery and equipment had been removed or severed by January 1, 1988, the assessment date in question. A county appraiser, who visited the property in January, 1988, testified that most of the machinery and equipment was still in place. Intervenor contends that much of the equipment, such as the furnaces, had been cut into or severed and constituted scrap. Some equipment, such as the tram and calcinators, were never moved. Intervenor purchased the equipment in place and resold much of it without moving it.

## STATUTORY EXEMPTION

Defendant's opinion and order held that most of intervenor's property was exempt from taxation as inventory under ORS 307.400(2). Inventory is defined to include:

> "Items of tangible personal property described as materials, supplies, containers, goods in process, finished goods

and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business." ORS 307.400(3)(f).

## ISSUES

The issues raised by plaintiff's complaint are as follows:

(1) Whether the smelter and mining equipment and the slag heap are "tangible personal property" within the meaning of ORS 307.400(3)(f).

(2) Whether intervenor qualifies under the statute as a taxpayer whose stock in trade is held for sale in the ordinary course of business.

(3) Whether the three centrifuges were still the property of intervenor on the assessment date.

## ORDINARY COURSE OF BUSINESS

Plaintiff contends that intervenor does not qualify under the statute because its only business was to liquidate a single property. Plaintiff argues that the law anticipates a cycling or replenishing of inventory. Intervenor responds that no such requirements are found in the statute.

■ Traditional and long-standing policies hold exemptions are exceptions to the rule. Therefore, exemptions are strictly but reasonably construed. *See SW Oregon Pub. Def. Services v. Dept. of Rev.*, 312 Or 82, 88-89, 817 P2d 1292 (1991), and cases cited therein.

Plaintiff relies upon *Simpson v. Dept. of Rev.*, 299 Or 282, 702 P2d 399 (1985). In that case, the taxpayer was a tree farmer who also occasionally dealt in used equipment. The Supreme Court quoted as follows:

" 'There are no defined minimum standards for an ordinary course of business for these purposes, but the Court assumes that any person or entity seeking the advantage of the exemption provisions of ORS 307.400 needs to establish that *there is an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items*. Factors to be considered as to whether such acquisitions and sales are sufficiently shown would include, but not be limited to, the number of sales, the dollar amount of sales,

the location of sales, the method(s) of acquisitions and sales, the existence of an office of identifiable, predictable, locatable situs for the delivery of inventory and the making of sales, the existence of a registered assumed business name, business cards, checks, business telephone number and other indicia of holding out publicly as a buyer and seller of an identifiable, definable inventory.' " *Id.* at 285-86. (Emphasis added) (quoting *Simpson v. Dept. of Rev.*, No. 1837 at 2-3 (Or Tax Sept. 13, 1984)).

■     The court finds that intervenor is not "an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items." Intervenor bought the property for resale, but made no further purchases. Under a strict but reasonable construction of the statute, it appears the legislature intended to exempt only the inventory of businesses which purchase, sell and replenish their stock in the ordinary course of business.

The fact that intervenor was in the liquidation business does not mitigate the requirements of the statute. The parties stipulated that Universal was a recognized used equipment dealer. There seems to be little doubt that, if Universal were the taxpayer in question, the property could qualify under ORS 307.400(3)(f). However, Universal is not. Intervenor is the taxpayer and is the business that must qualify.

Intervenor seeks to take advantage of what might be viewed as a loophole under a broad construction of the statute. That is, the exemption is designed for inventory sold in the regular course of business. A business which sells its operating equipment or fixtures is not entitled to an exemption for such property. Under intervenor's position, such a company could create a new "business" solely for the purpose of liquidating the equipment and fixtures and then claim them exempt. However, such a broad interpretation of the statute is contrary to reason.

■     Finding that intervenor's property does not qualify as inventory renders moot the issue of the character of the property. This leaves a remaining issue of whether the three centrifuges were assessable to intervenor on the assessment date. The court finds that the centrifuges were still in place on January 1, 1988. Although intervenor agreed to sell them

"as-is, where-is" on October 30, 1987, there is nothing to indicate that title passed to the purchaser at that time. The court finds that the centrifuges were taxable to intervenor as holder of legal title. *See First EUB Church v. Commission*, 1 OTR 249, 258 (1963).

Intervenor argues that since the plant was inoperable, the centrifuges could be viewed as if they were sitting on a showroom floor. The court disagrees. The centrifuges, which were extremely large, heavy pieces of industrial equipment, were still attached to concrete foundations.

Based on the above conclusions defendant's Opinion and Order No. 88-3546(X) must be set aside. The court finds that the subject property is taxable at the assessed values as stipulated by the parties as follows:

| Account No. | Description | True Cash Value |
| --- | --- | --- |
| 13894.00 | Land | $ 175,684 |
| 13894.00 | Improvements | 1,587,060 |
| 13758.01 | Improvements | 1,034,766[1] |
| 306135 | Plant mobile | 332,057 |
| 306135 | Furniture and fixtures | 679,366 |
| 13894.02 | Slag pile | 150,000 |

Plaintiff to recover costs.

---

[1] The stipulation contains a typographical error which the parties and the court have ignored.