H-P VENTURES, INC.,
dba Adventures Video
*v.*
DEPARTMENT OF REVENUE
(TC 3705)

John R. Perkins, III, The Dalles, represented plaintiff (taxpayer).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered July 19, 1995.

**CARL N. BYERS, Judge.**

The Wasco County assessor determined that certain video tapes owned by taxpayer are not exempt as "inventory" and assessed them as omitted property for the 1991-92 through 1993-94 tax years. Taxpayer appeals from the Department of Revenue's (department) opinion and order sustaining the omitted property assessments.

## FACTS

Taxpayer began operating a small video store in December 1990 in The Dalles. It purchased the bulk of its 2,500 video tapes from a broker in Portland. Ninety percent of the tapes purchased were older movies costing $7.50 and $8.50 each and the remaining 10 percent were newer releases (90 days or less on the market) for which taxpayer paid $10 to $30 each. Taxpayer also purchases new releases for $60 to $70 each.

The video store receives approximately 80 percent of its gross income from rentals. Its computerized records show the history of each video tape, the number of times it is rented and how many copies are sold. Taxpayer's witness testified that all of its video tapes are for sale, advertised to the public by posting signs. There are no special racks or locations for sale tapes and only a small percentage of them are marked with a sale price. Taxpayer also special orders video tapes for customers.

Taxpayer's manager prepared and filed a personal property tax return for the 1991-92 tax year. Before doing so the manager talked to staff in the local assessor's office to obtain assistance with the form. The manager testified that he told the assessor's office he believed the video tapes were inventory and therefore exempt. The staff person acknowledged that some video stores claimed the tapes as exempt while others reported them as taxable. Finding no strong

disagreement, the manager decided they were exempt and treated them as such. However, in 1993, the assessor's office decided that rental video tapes were taxable and added their value to the rolls for three years as omitted property.

## ISSUES

Taxpayer's complaint raises three issues:

1. Is the subject property exempt from taxation as inventory under ORS 307.400?

2. If it is not exempt, is the assessor's office estopped from denying that it is exempt?

3. If the subject property is taxable, what is its real market value for the assessment years in question?

## EXEMPTION ANALYSIS

The relevant portions of ORS 307.400[1] provide:

"(2) All inventory shall be exempt from ad valorem taxation.

"(3) As used in subsection (2) of this section, 'inventory' means the following tangible personal property:

"* * * * *

"(f) Items of tangible personal property described as materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business."

Taxpayer claims the subject video tapes are exempt as inventory on two separate grounds. First, all of the video tapes in taxpayer's video store are for sale and, therefore, constitute inventory. Second, all video tapes including new releases will become part of the inventory held for sale.

■ Taxation is the rule and exemption is the exception. Exemption statutes are narrowly construed, and the taxpayer must clearly bring itself within the terms of the statute. *Mercy Medical Center, Inc. v. Dept. of Rev.*, 12 OTR 305 (1992). To construe the statute the court must look to its text

---

[1] All references to the Oregon Revised Statutes are to the 1991 Replacement Part.

and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d, 1143 (1993).

■ The statute exempts property "held for sale in the ordinary course of business." Taxpayer's business consists of 80 percent rentals and 20 percent sales. The court finds that property held for rent is not exempt because it is not "held for sale in the ordinary course of business." The language of the statute indicates the legislature intended to exempt property which is primarily held for sale.

■ The context of the statute is not particularly helpful. The legislature has used ORS 307.400 as an accumulation bin for agricultural and other exemptions. There is no consistent theme or policy to aid the court in construing the statute. Taxpayer argues that property which "will become" part of the inventory held for sale is also made exempt by the statute. However, a strict but reasonable construction would limit this phrase to property held or used by manufacturing and processing businesses. Otherwise, all personal property could be considered exempt under the philosophy of the ancient but cynical adage that "everything is for sale at the right price." The exemption in question is intended to benefit businesses which sell property in the ordinary course of business. It was not intended to exempt personal property which is used to produce rental income and later sold as an incidental benefit of its ownership.

■ The court concludes that the exemption is limited to property which is primarily held for sale. Although an incidental rental of property held for sale will not destroy the exemption, the burden of proof is on the taxpayer. In this case, taxpayer's primary business is renting videos and therefore the video tapes are primarily held for rental.[2]

## ESTOPPEL CLAIM

■ To meet the requirements of an estoppel claim, taxpayer must establish: Misleading conduct on the part of an official, good faith reliance on that conduct, and injury. *Portland Adventist Hospital v. Dept. of Rev.*, 8 OTR 381 (1980).

---

[2] If video tapes are held primarily for sale, such as by segregation in a separate rack or location and advertised for sale, they may be exempt even though the primary business of the store is rentals.

Taxpayer has not met this burden. Taxpayer did not present evidence of misleading conduct or reliance by taxpayer to its damage. Taxpayer does not claim that the assessor gave wrong information or misled its employees. Rather, taxpayer maintains the assessor knew of its position in 1991 and was obligated to act. When the assessor failed to act, he waived the right to correct the roll. This is a claim of waiver, not estoppel.

■ The evidence indicates that communication between taxpayer and the assessor was ambiguous at best. There was no indication that the assessor accepted taxpayer's characterization or treatment of the video tapes for property tax purposes. Waiver is a voluntary relinquishment of a known right. *Waterway Terminals v. P.S. Lord*, 242 Or 1, 406 P2d 556 (1965). Taxpayer introduced no evidence to show that the assessor voluntarily and knowingly relinquished the right to challenge taxpayer's claim of exemption. Moreover, ORS 311.205 gives the assessor five years to add the property as omitted property. This implies that the legislature allows assessors up to five years to correct their mistakes. *See Freightliner Corp. v. Dept. of Rev.*, 275 Or 13, 549 P2d 662 (1976).

## REAL MARKET VALUE

Taxpayer introduced little evidence of value. Taxpayer's former manager testified that, in his opinion, the value of the subject inventory was only $3.50 to $4.50 per tape for the entire inventory. This appears to be based on another video store's offer of $4.50 per tape for the entire inventory. The department's witness, owner of two video stores, testified that the older movies cost approximately $7.50 each and the newer, popular movies cost $25-$30 each. Information provided to the assessor by taxpayer indicated the average retail selling price per tape was $13.32. The appraiser used $13.50 to arrive at the values for the omitted property.

■ The correct measure of real market value to be applied in this case is the typical cost to taxpayer, not the retail price to taxpayer's customers. What is being taxed are video tapes held primarily for rent. The real market value of video tapes held primarily for rent is the owner's cost of

obtaining those tapes. Based on the evidence, the court finds that the average cost of taxpayer's tapes was $8 for 90 percent of them and $25 for 10 percent or $9.70 ($10 rounded) overall. Accordingly, the court finds the real market value of the omitted property was as follows:

| Tax Year | Omitted Real Market Value |
| --- | --- |
| 1991-92 | $10,560.00 |
| 1992-93 | 12,300.00 |
| 1993-94 | 14,310.00 |

Judgment will be entered in accordance with this opinion. Costs to neither party.