DECISION
Plaintiff appealed Defendant's determination that it owes ad valorem property taxes for the 2007-08 tax year on certain tangible personal property that was owned by L.H. Morris Electric, Inc. (L.H. Morris) until December 19, 2006. At that time, L.H. Morris surrendered the assets to Plaintiff because it was in default on its loan from Plaintiff. Plaintiff was represented by Benjamin M. Kearney, Attorney at Law. Defendant was represented by Marc Kardell, Assistant County Counsel, Lane County. The matter is before the court on stipulated facts and cross-motions for summary judgment.
 I. STATEMENT OF FACTS
The parties have stipulated to the following facts:
L.H. Morris was an electrical contracting company that was administratively dissolved by the Oregon Secretary of State on November 30, 2007. Prior to December 19, 2006, L. H. Morris owned personal property that was taxed by the Lane County Tax Collector as Account 5060122.
Plaintiff is an Oregon corporation doing business in Lane County as a community bank under the name Siuslaw Bank. Plaintiff's primary business function, as with any other bank, is to lend money to businesses in exchange for the payment of interest and/or fees for those loans, and for borrowers to pledge collateral as security. *Page 2 
An integral and necessary part of Plaintiff's lending function is to recover collateral and liquidate that collateral when a borrower defaults on a loan — to the extent that Plaintiff has a collection department dedicated to this function. Plaintiff does not maintain a sales department, a showroom, or a store for the sale of these items to be liquidated.
In 2006, L.H. Morris was in default on its loan from Plaintiff. On December 19, 2006, L.H. Morris surrendered its assets to Plaintiff to be liquidated and the proceeds applied against the balance of the loan. Said surrender was accomplished by L.H. Morris executing a Collateral Surrender Agreement (Stip'd Ex A) and providing the keys to its principal place of business to Plaintiff. Plaintiff immediately turned possession of the principal place of business over to another electrical contracting company, Oregon Electric Group, Inc. (OEG).
L.H. Morris ceased performing any electrical contracting work sometime prior to December 19, 2006. The L.H. Morris property that came into the possession of Plaintiff was comprised of equipment, vehicles, and inventory used by L.H. Morris in the conduct of its electrical contracting business.
On or about December 1, 2006, Plaintiff (Siuslaw Bank) engaged Pahl Auctioneers (Pahl) to inventory and value all the personal property, including vehicles, equipment, inventory and the like, owned by L.H. Morris.[1]
Plaintiff entered into negotiations with OEG immediately upon receiving the L.H. Morris property. On or about February 8, 2007, Plaintiff executed an agreement with OEG, wherein OEG purchased approximately one-half of the L.H. Morris property.[2] OEG paid $305,035.66 for *Page 3 
those items. On or about February 14, 2007, Plaintiff sold four vehicles (total value $9,550) and two items of equipment (total value $3,750) to Aspen Ridge Electric, Inc.[3]
Plaintiff engaged the services of Pahl, who had previously inventoried and valued the property, to sell the remainder of the L.H. Morris property.[4] Plaintiffs agreement with Pahl required that if any taxes were owing on the personal property sold at the auction, those would be the responsibility of Plaintiff. Thereafter, on or about March 14, 2007, Pahl, on behalf of Plaintiff, sold substantially the remainder of the L.H. Morris property at auction. The total proceeds of the sale by Pahl were $312,840.50.
Other than as a sale of collateral, the property at issue was not used by Plaintiff to generate income.
Plaintiff timely filed a personal property return for its 2007 taxable personal property. That return did not include the L.H. Morris property.
Plaintiff paid the 2006 taxes for the L.H. Morris property because those taxes were a lien on the property at the time it came into Plaintiffs possession.[5]
Plaintiff has not paid the 2007 taxes that the Lane County Tax Collector (Tax Collector) alleges it owes. The tax year 2007-08 assessment includes a penalty equal to 50 percent of the tax attributable to the personal property. (Ptf's Compl at 4; Stip'd Fact 12.) *Page 4 
According to the Tax Collector, Plaintiff owes taxes for the 2007-08 tax year in the amount of $5,564.60, a late filing fee of $2,782.30, [6]
plus interest and a $15 warrant fee. Interest continues to accrue on the principal and late filing fee.
Although the parties have stipulated to the above facts, they do not stipulate to the relevance of such facts. The parties reserved the right to raise any and all objections related to relevance.
 II. ANALYSIS
As a general rule, in Oregon, tangible personal property is subject to assessment and taxation. ORS 307.030.[7] However, ORS 307.400 exempts from assessment and taxation qualifying "inventory." ORS 307.400
provides:
 "Items of tangible personal property consisting of inventory, including but not limited to materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business, are exempt from ad valorem property taxation." (Emphasis added.)
There are two issues in this case. The first is whether the property that Plaintiff came to acquire from L.H. Morris pursuant to a Collateral Surrender Agreement — as a result of the borrower's failure to pay debts owed to Plaintiff — is exempt inventory under ORS 307.400. The second issue is whether Defendant properly imposed the late filing penalty.
A. ORS 307.400 Inventory Exemption
In resolving this issue, the court will review the relevant case law. In Simpson v. Dept. of Rev., 299 Or 282, 702 P2d 399 (1985) (Simpson), the taxpayer was a tree farmer who also *Page 5 
occasionally dealt in used equipment. The taxpayer attempted to prove an ongoing enterprise of selling used equipment by testifying that he had been a used equipment dealer for 19 years and had bought and sold dozens of items in the years just prior to the applicable assessment date. Taxpayer introduced evidence of ads he placed in various trade publications, but the court found that evidence suspect because the ads were placed after the applicable assessment date. Simpson, 299 Or at 288. In declining to find the property exempt under ORS 307.400, the Oregon Supreme Court adopted the standard applied by the Tax Court that "`any person or entity seeking the advantage of the exemption provision of ORS307.400 needs to establish that there is an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items.'" Simpson, 299 Or at 286. In ruling against the taxpayer, the court held that "taxpayer has not convinced us that he has consistently and systematically undertaken to acquire and sell used equipment so that he is entitled to the exemption provided by ORS 307.400."Id. at 288. In so ruling, the court expressly "agree[d] with the Tax Court that taxpayer was engaged in `casual sales conducted sporadically for profit' and not sale of equipment `in the ordinary course of business.'" Id.
Seven years later, the Tax Court rendered a decision against a taxpayer seeking exemption under ORS 307.400, based on the test set forth by the Oregon Supreme Court in Simpson. The case was DouglasCounty Assessor v. Dept. of Rev., 12 OTR 248 (1992) (Douglas CountyAssessor).
The taxpayer in Douglas County Assessor was Nickel Mountain Resources Co. (Nickel Mountain), a wholly owned subsidiary of a company (Universal Consolidated Companies, Inc.) that was in the business of buying and selling used mining equipment. Id. at 249. Nickel Mountain purchased the equipment in place, from a mining company that had ceased operations, and resold much of the equipment without moving it. Id. The assessor determined that the *Page 6 
property was taxable and, on appeal, the Oregon Department of Revenue (department) found the property to be exempt inventory under ORS307.400. Id. The assessor appealed, and the Tax Court set aside the department's Opinion and Order, finding that the property was taxable.Id. at 252. The Tax Court found that Nickel Mountain failed to establish "`an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items.'" Id. at 251. Utilizing a "strict but reasonable construction," the court stated that "it appears the legislature intended to exempt only the inventory of businesses which purchase, sell and replenish their stock in the ordinary course of business." Id. The court stated that Nickel Mountain "bought the property for resale, but made no further purchases." Id. Interestingly, the court declared that "if Universal were the taxpayer in question, the property could qualify [for the inventory exemption.]" Id. The rationale for that statement was that Universal was a recognized used equipment dealer that regularly purchased, sold, and replenished its stock in the ordinary course of business.
Three years later, the Tax Court decided H-P Ventures, Inc. v. Dept. ofRev., 13 OTR 330 (1995) (H-P Ventures). The taxpayer in H-P Ventures
operated a small video store. The majority of the taxpayer's income (80 percent) came from video rentals and the balance (20 percent) from video sales. Id. at 333. Furthermore, while the taxpayer did sell some of its videotapes, the sale tapes were not segregated from the rental inventory "and only a small percentage of them [were] marked with a sale price."Id. at 331. The Tax Court rejected the taxpayer's argument that all of the videotapes were for sale and, therefore, exempt inventory under ORS307.400. In denying the exemption, the court ruled that "[t]he exemption in question is intended to benefit businesses which sell property in the ordinary course of business." Id. at 333. The court concluded that "the exemption is limited to property which is primarily held for sale." Id.
The court believed that that was the intent of the legislature. Id. The court further *Page 7 
stated that the statute "was not intended to exempt personal property which is used to produce rental income and later sold as an incidental benefit of its ownership." Id. The court did opine in a footnote that "[i]f video tapes are held primarily for sale, such as by segregation in a separate rack or location and advertised for sale, they may be exempt even though the primary purpose of the store is rentals." Id. at 333, n2.
Although the statute has been amended since those decisions were rendered, the language of the operative provision, subsection (3)(f), was nearly identical to the version of the statute here at issue (exempting as inventory "[i]tems of tangible personal property * * * owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business."Simpson, 299 Or at 284 (emphasis omitted); Douglas County Assessor,12 OTR at 249-50; H-P Ventures, 13 OTR at 332.
From the foregoing, the following observations can be made. First, there are two prerequisites, or rules, applicable to the inventory exemption. One rule is that the property must be "primarily held for sale." H-P Ventures, 13 OTR at 333. The other rule is that the taxpayer "needs to establish that there is an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items." Simpson, 299 Or at 286; Douglas County Assessor,12 OTR at 251 (quoting Simpson.)
The other observation is that the judicially declared legislative intent is "to exempt only the inventory of businesses which purchase, sell and replenish their stock in the ordinary course of business."Douglas County Assessor, 12 OTR at 251.
Utilizing those rules, and the apparent intent of the legislature, the court concludes that the tangible personal property at issue in this case is not entitled to the inventory exemption provided in ORS 307.400. While the disputed property was held primarily for sale, and Plaintiff apparently routinely comes into ownership and possession of tangible personal property which it *Page 8 
then sells, Plaintiff does not "undertake[] to acquire" that property but, rather, obtains the property through borrower default and relinquishment of ownership. Simpson, 299 Or at 286. Finally, as for legislative intent, Plaintiff is not in the business of purchasing, selling, and replenishing a stock of inventory "in the ordinary course of business." Douglas County Assessor at 251 (emphasis added).
As this court noted in H-P Ventures, Inc., "[t]axation is the rule and exemption is the exception. Exemption statutes are narrowly construed, and the taxpayer must clearly bring itself within the terms of the statute." H-P Ventures Inc., 13 OTR at 332 (citing Mercy Medical Center,Inc. v. Dept. of Rev., 12 OTR 305 (1992)). The court concludes that Plaintiff has not clearly brought itself within the terms of the statute. Moreover, as Plaintiff notes in its Motion for Summary Judgment, "summary judgment is appropriate if `the agreed upon facts would compel a jury to return a verdict for the moving party.'" (Ptf's Mot for Summ J at 1 (citing Jones v. General Motors Corp., 325 Or 404, 414
(1997))). The court does not believe the facts in this case would compel a jury to rule in Plaintiff's favor.
Plaintiff argues that "`inventory is property held for sale.'" (Ptf's Mot for Summ J at 2) (citation omitted.) Plaintiff relies on an Oregon bankruptcy court case, In re Columbia River Broad., Inc. v. ColumbiaGresham Broad. Corp., 106 BR 666 (1989) (In re Columbia River), and a 1984 Oregon Attorney General opinion[8] cited with approval in In reColumbia River, for that proposition. The court agrees that a requirement for the inventory exemption is that the property be held for sale, as explained above. H-P Ventures, 13 OTR at 333. However, the Oregon Supreme Court in Simpson made it clear that more is required. As indicated above, Plaintiff must establish "an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items." Simpson, 299 Or at 286. Additionally, the taxpayer *Page 9 
must be "replenish[ing]" its "stock in the ordinary course of business."Douglas County Assessor, 12 OTR at 251. Those requirements are not satisfied in this case. Decisions in property tax cases issued by the Oregon Tax Court and the Oregon Supreme Court control over Oregon bankruptcy court cases and Oregon Attorney General Opinions. Moreover, as to the latter, the Attorney General Opinion was issued prior to the Oregon Supreme Court's opinion in Simpson.
In insisting that it sells equipment in the ordinary course, Plaintiff relies on H-P Ventures for the rule that "the legislature intended to exempt property which is primarily held for sale." (Ptf's Mot for Summ J at 3, quoting H-P Ventures, 13 OTR at 333.) Plaintiff argues that "the Court [in H-P Ventures] was focused on the property at issue, [and] not the business of the taxpayer." (Id.) Moreover, Plaintiff argues that taking possession of and selling collateral is an ordinary and usual activity for the bank, and that "[s]uch activity is [therefore] within the ordinary course of operating a bank." (Ptf's Mot for Summ J at 4.) As indicated above, the focus is both on the property at issue and the business of the taxpayer, as the two are often inextricably intertwined. And, more is required than the mere holding of the property for sale. "Otherwise, all personal property could be considered exempt under the philosophy of the ancient but cynical adage that `everything is for sale at the right price.'" H-P Ventures, 13 OTR at 333. It is worthwhile to note that, while H-P Ventures was issued after Simpson, the H-P Ventures
court had no need to address the requirement in Simpson of `an ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items[]", because the taxpayer in H-PVentures failed to satisfy the first requirement — namely, that the property be held primarily for sale. Simpson, 299 Or at 286. *Page 10 
As a final matter, the court is not declaring Plaintiff's property taxable pursuant to ORS 307.190(2) as either property held "for the production of income," or "for investment."[9] Rather, the property is taxable under ORS 307.030, which provides that "[a]ll * * * tangible personal property situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion." The property is not exempt under ORS 307.400, and no other provision of law has been cited by Plaintiff, nor is the court aware of any such provision.
The court holds a taxpayer in the business of lending money to businesses in exchange for the payment of interest, with the borrowers pledging collateral as security for the loans, and where a necessary aspect of the lender's business is to recover and liquidate that collateral when a borrower defaults, such property is not entitled to the inventory exemption provided in ORS 307.400 because there is no ""ongoing enterprise which consistently and systematically undertakes to acquire and then to sell inventory items,'" as required by Simpson. 299 Or at 286
(citation omitted). The intent of the legislature is not satisfied because the lender does not "purchase, sell and replenish [its] stock in the ordinary course of business." Douglas County Assessor, 12 OTR at 251. In so holding, the court rejects Plaintiff's contention that the focus must be on the nature of the item and not of the nature of the taxpayer's business. The rules established by the courts, as set forth above, clearly reveal that the focus is both on the nature of the item (i.e., whether it is primarily held for sale) and on the nature of the business (i.e., those "businesses which sell property in the ordinary course of business"). H-P Ventures, 13 OTR at 333. See also Simpson, 299 Or at 286
(ruling that "`any person or entity seeking the advantage of the exemption provision of ORS 307.400 needs to establish that there is anongoing enterprise *Page 11 
which consistently and systematically undertakes to acquire and then to sell inventory items.'" (Emphasis added) (citation omitted).
B. Personal Property Penalty
Plaintiff has requested that, if the court finds the subject property taxable, the court waive the penalty Defendant imposed on it for the 2007-08 tax year. Plaintiff argues that the penalty is improper because it "timely filed its 2007 personal property tax return." (Ptf's Mot for Summ J at 4.) Plaintiff further argues that "Defendant, through not contesting Plaintiff's alternate theory in its Response, does not contest Plaintiff's position that this fee is illegal." (Ptf's Reply to Def's Response to Ptf's Mot for Summ J at 4.)
Defendant imposed a penalty equal to 50 percent of the tax. The penalty was imposed under the provisions of ORS 308.296(4). That statute provides that "[a]fter August 1, a taxpayer who files a return to which this section applies or who fails to file a return shall be subject to a penalty equal to 50 percent of the tax attributable to the taxable personal property of the taxpayer."
An administrative rule promulgated by the Oregon Department of Revenue (department) requires that taxpayers "must submit a substantially complete return by the due date of the return." OAR 150-308.290(4)(b)(2).[10] That rule further provides that "[a] return is not substantially complete if: (a) It is submitted with blank or missing schedules * * *."Id. Plaintiff's return was not substantially complete because it was submitted with "missing schedules." By rule, such a return is deemed not filed. OAR 150-308.290(4)(b)(3) (providing that "a return that is not substantially complete will not be considered `filed'"). *Page 12 
The penalty was imposed in accordance with applicable law, and the court lacks the statutory authority to consider whether the penalty should be waived or reduced.
The court rejects Plaintiff's assertion that Defendant is not contesting the imposition of the penalty. In its Complaint, Plaintiff asserted in Section 3 that there was no basis for collection of the penalty because "Plaintiff filed its 2007 personal property tax return in a timely manner." (Ptf's Compl at 2.) In Section 4 of its Complaint, Plaintiff requests that the court order Plaintiff "not responsible for the late filing penalty." (Id.) Defendant in its Answer disagreed with those portions of the Complaint, and requested that the court "enter a judgment denying Plaintiff's requested relief." While Defendant did not address the penalty in its Motion in Response, Defendant's Answer preserves the objection to the waiver request.
 III. CONCLUSION
For the reasons set forth above, the court concludes that the subject property, identified as assessor's Account 5060122, is not entitled to the inventory exemption provided in ORS 307.400. Furthermore, the court concludes that the penalty was properly imposed and that the court lacks any statutory authority to waive or reduce that penalty. Now, therefore, *Page 13 
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is denied;
IT IS FURTHER DECIDED that the property at issue is subject to assessment and taxation for the 2007-08 tax year;
IT IS FURTHER DECIDED that Plaintiff is responsible for the 2007-08 taxes; and
IT IS FURTHER DECIDED that Plaintiff is responsible for the 50 percent late filing penalty.
Dated this _____ day of April 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on April 17, 2009.The Court filed and entered this document on April 17, 2009.
[1] The list of items prepared by Pahl Auctioneers was submitted by the parties as Exhibit B.
[2] The parties attached a list of the items that OEG purchased from Plaintiff, labeled Exhibit C.
[3] Exhibit D.
[4] It is not clear from the stipulated facts exactly when Plaintiff asked Pahl to sell the L.H. Morris property, but it appears to have been sometime in February 2007, after Plaintiff sold some of the items to OEG and others.
[5] Plaintiff paid the taxes for the 2006-07 tax year because the property was subject to assessment and taxation on July 1, 2006, and the subsequent transfer did not extinguish the liability. ORS 311.410(1). The property was in the hands of L.H. Morris on July 1, 2006, and it was used for the production of income. ORS 307.190(2). L.H. Morris did not pay the taxes and a lien attached on July 1, 2006. ORS 311.405(3)(b). The transfer of the property to the secured party (Plaintiff) in December 2006 did not affect the property tax lien assessed against the property. ORS 311.656(2).
[6] Although the stipulated facts indicate that the late filing fee is $2,682.30, the personal property tax statement reflects a tax of $5,564.60, and a "late filing penalty" in the amount of $2,782.30. A penalty of 50 percent of the tax comes to $2,782.30. The court, therefore, assumes that to be the correct amount of the penalty Defendant imposed.
[7] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to the 2005 edition.
[8] Or Op Atty Gen OP-5775, WL 192193 (Dec 13, 1984).
[9] Defendant made that argument in its Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment at 2, 3; and, Plaintiff challenged that assertion in its reply memorandum at 2, 3.
[10] References to the Oregon Administrative Rules (OAR) are to the 2005 edition. *Page 1