IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RAINBOW YOUTH GOLF EDUCATION )
PROGRAM, INC., )
)
        Plaintiff, ) TC-MD 190366N
)
    v. )
)
KLAMATH COUNTY ASSESSOR, )
)
        Defendant. ) **DECISION**

    Plaintiff appealed Defendant's removal of the subject property's[1] exemption for the

2019-20 tax year. A trial was held by telephone on May 13, 2020. William E. Ray, Jr. (Ray),

Plaintiff's executive director and owner of the subject property, appeared and testified on behalf

of Plaintiff. Ellsworth Lang (Lang) and Garrett Souza (Souza), individuals who have used the

subject property, each testified on behalf of Plaintiff. Pamela Cole (Cole), Defendant's

commercial/industrial appraiser and exemption tech, appeared and testified on behalf of

Defendant. Plaintiff's Exhibits 1 to 9 were received without objection. Defendant's Exhibits A

to O were admitted over Plaintiff's objection. Ray stated that he never received Defendant's

exhibits. Cole stated that she sent the exhibits by certified mail and presented evidence that she

postmarked the exhibits on April 28, 2020. *See* Tax Court Rule-Magistrate Division 12.

## I. STATEMENT OF FACTS

A.    *Plaintiff Organization*

    Plaintiff is an Oregon non-profit organization, exempt from income taxation as a public

---

[1] The subject property is composed of Accounts 230388, 229247, 229274, 229256, 229292, 229309, 896820, 896819, 599196, 599025, and 896822. It is the Rainbow Youth Golf Education Program DBA DMOLO Golf Facility (golf facility).

charity under Internal Revenue Code section 501(c)(3). (Ptf's Ex 1 at 14.) Under its bylaws, Plaintiff's purpose is to make "golf more available to people of all social status, particularly the youth in the Klamath Basin" and to "[p]rovide every youth, regardless of race and economic background, the opportunity to learn and play golf." (*Id.* at 15.) Plaintiff seeks to "[i]nstill [golf's] inherently positive values, such as honesty, integrity, sportsmanship and self-discipline" and "[d]evelop in participants greater self-esteem, civic responsibility and confidence to broaden their goals in life." (*Id.*) Plaintiff focuses particularly on engaging youth from the Klamath-Modoc-Yahooskin tribes. (*See id.*; Ptf's Ex 5 at 1.) Plaintiff operates in an area with higher rates of crime, domestic violence, substance abuse, and other health problems; thus, Plaintiff serves a need for athletic and educational opportunities in the area. (Ptf's Ex 5 at 1-3.)

Ray testified that, since 2000, Plaintiff has operated a golf education program in Chiloquin serving youth ages 7 to 18 years old. (*See* Ptf's Ex 5 at 4.) In accordance with Plaintiff's purpose, the program creates opportunities for disadvantaged youth in the Klamath Basin. (*Id.*) Before Plaintiff constructed the subject property golf course, it transported youth to Harbor Links Golf Course to participate in its program approximately 30 miles away. (*See* Ptf's Ex 1 at 20-23.) Plaintiff paid to use the golf course with funds from grants and donations. (*Id.*)

Ray testified that, since opening the subject property in 2010, Plaintiff has offered its six-week youth golf education program annually, including in 2019. (*See also* Ptf's Ex 5 at 4.) Plaintiff provided letters, fliers, and affidavits from parents to demonstrate that youth participated for free in the program. (Ptf's Ex 7.) Ray testified that 20 to 25 youth participate per year, and 565 youth have participated since the program's inception. Plaintiff's youth golf education program teaches "golf playing techniques, rules, fundamentals, etiquette, [and] life learning/coping skills" and connects youth with tribal elders and other adult mentors. (Ptf's Ex 5

at 4.)

Ray testified that Plaintiff also operates ATA Wi' Learning Center, a partnered education program with Klamath County School District, that allows students at Chiloquin Junior/Senior High School to complete Fisheries Curriculum requirements. (*See* Ptf's Ex 5 at 5; Ex 1 at 19.) Plaintiff's ATA Wi' Learning Center operates "to foster and improve the educational opportunities" for disadvantaged youth in the Klamath Basin. (Ptf's Ex 5 at 5.)

B.      *Subject Property*

The subject property is a 50-acre golf course located in Chiloquin, Oregon. (Ptf's Ex 1 at 1.) Plaintiff signed a commercial lease of the subject property on April 1, 2005. (*Id.* at 7.) Plaintiff leased the subject property from Ray for $750 per year through April 1, 2020, with the option to renew. (*Id.* at 13.) Plaintiff constructed the golf facility in 2008 and 2009, opening in 2010. (Ptf's Ex 5 at 4.) The subject property has "a grass tee driving range/practice-chipping green and bunker, three regulations golf holes, a Par 3, a Par 4 and a Par 5." (*Id.*) The subject property has a portable pay station that offers self-service to patrons. (Ptf's Ex 2 at 5-6.) Ray testified that the subject property is unlike traditional golf courses in the county because it does not offer 18 holes and it does not have a clubhouse. He testified that, unlike other golf courses in the county, the subject property cannot host competitive tournaments.

Ray testified that he is the subject property's caretaker and he oversees the subject property's expenses. Ray testified that it costs between $8,000 and $12,000 each year to maintain the golf facility on the subject property. To limit expenses, Ray testified that he waters only the tee boxes and greens and relies solely on volunteers rather than employees. Lang, who worked as the property manager for 15 years at Running Y Ranch Resort, testified that that golf course had a $1,000,000 annual maintenance budget.

C.      *Plaintiff's Use of the Subject Property*

Plaintiff uses the subject property "to generate income from the public, reduce costs, education benefits, create training opportunities for local youth, [and] build towards self-sustaining." (Ptf's Ex 5 at 4.) Plaintiff opened the subject property to the public to "ensure the perpetuation of the [youth golf education] program" by creating a revenue source and ending its reliance on the "whims of outsider funders." (Ptf's Ex 5 at 4.) Plaintiff used golf course fees from the public to support its youth golf education program and to maintain the subject property. (*See id.*; Ptf's Ex 1 at 2.)

Ray, Lang, and Souza each testified that the subject property is the most affordable golf course in the county. When open to the public, the subject property's fees range from $5 to $20, and youth under the age of 16 golf for free. (Ptf's Ex 2 at 6.) Lang testified that Running Y Ranch Resort charges up to $90 per round of golf, and youth do not golf for free.

Although the subject property charged fees to golf, Cole testified that the subject property did not compete with other golf courses in the county. Ray testified that Plaintiff designed the subject property to make golf affordable for the local community with fees significantly lower than other golf courses in the county. Lang and Souza each testified that Plaintiff allowed their children to golf for free, and Souza testified that Ray allowed him to golf on the subject property when he could not afford to pay the course fees.

Since 2013, ATA Wi' Learning Center operated at Chiloquin Junior/Senior High School and the subject property. (*See* Ptf's Ex 5 at 5.) In May 2019, students from Chiloquin Junior/Senior High School visited the subject property twice to participate in the partnered education program. (Def's Ex N at 1.) The partnered education program used the subject property "for outdoor project based education classrooms," and served 130 students through the

program. (Ptf's Ex 5 at 5.) Ray testified that, as an additional educational opportunity, he has cultivated native and culturally sensitive plants at the subject property and labeled plants in both native language and English. (*See id.* at 6.) He testified that "dmolo" means wild plum in the Klamath language. (*See id.* at 4.)

C.       *Defendant's Removal of the Subject Property Tax Exemption*

Cole testified that in 2019, Defendant reviewed all 137 property tax exemptions in the county and sent letters in mass to all such property owners or lessees. (*See also* Def's Ex A at 1.) She testified that properties for which no response was received were "flagged for further review." (*See id.*) Cole testified that Defendant applied uniform standards to evaluate whether properties were entitled to charitable tax exemption, ultimately concluding that 17 properties did not meet the charitable use standard including the subject property.

On September 4, 2019, Defendant sent Plaintiff a letter stating Defendant removed the subject property's tax exemption for the 2019-20 tax year. (Def's Ex A at 1.) In a letter dated November 1, 2019, Plaintiff responded to Defendant, disputing the decision and providing additional information concerning the subject property. (Ptf's Ex 4 at 1.) Also, on November 1, 2019, the parties met to discuss Defendant's removal of Plaintiff's property tax exemption. (Def's Ex A at 2.) Shortly after, Plaintiff filed this appeal alleging that Plaintiff received inadequate notice regarding Defendant's removal of the subject property's tax exemption, Defendant discriminated against Plaintiff in its property tax exemption evaluation, and the subject property should continue to receive the property tax exemption. (Ptf's Resp.)

Cole testified Defendant disqualified the subject property because Plaintiff's charitable use of the subject property totaled only 10 days compared to 215 days that the subject property

was open to the public for a fee.[2] (Def's Ex M.) Defendant considered Plaintiff's primary use of the subject property to be as a fee-based golf course. Noting that Oregon has rejected the "destination of income" theory, Cole concluded that Plaintiff's operation of a golf course for a fee did not qualify as an exempt use even though the funds supported the youth golf education program. (*See id.*) Cole testified that Plaintiff did not exclusively use the subject property because 1st Nations Golf Association, a public charity under Internal Revenue Code section 501(c)(3), used the same address. (*See* Def's Ex J.) Ray testified that 1st Nations Golf Association dissolved in 2014 and never used the subject property.

## II. ANALYSIS

Plaintiff presented three issues for decision. First, whether Plaintiff received timely notice regarding removal of its property tax exemption. Second, whether Defendant discriminated against Plaintiff when Defendant reviewed the subject property's tax exemption. Third, whether the subject property qualifies for property tax exemption under ORS 307.130 for the 2019-20 tax year.

ORS 307.130(2) exempts from taxation certain "real or personal property, or a proportion of the property, that is actually and exclusively occupied or used" in the charitable work of an incorporated charitable institution.[3] Two potential issues arise under ORS 307.130: 1) whether the taxpayer qualifies as a charitable institution; and 2) whether the subject property is actually and exclusively used in taxpayer's charitable work. The parties agree that Plaintiff qualifies as a charitable institution, so the court focuses on the second issue.

---

[2] Defendant's 10-day calculation of charitable use is unclear. Defendant may be referring to youth golf education program days combined with ATA Wi' Learning Center's use days. Plaintiff hosted youth golf education program one day per week during the six weeks it was offered and hosted school groups on two additional days.

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

In construing exemption statutes, "[t]axation is the rule and exemption from taxation is the exception." *Dove Lewis Mem'l Emergency Veterinary Clinic, Inc. v. Dept. of Rev.*, 301 Or 423, 426-27, 723 P2d 320 (1986). The court strictly but reasonably construes property tax exemption statutes, giving "due consideration to the ordinary meaning of the words of the statute and the legislative intent," and construing ambiguities in favor of the state. *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 94-95 (2002).

Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971); *see* ORS 305.427. Proof by a preponderance of the evidence means "that the facts asserted are more probably true than false." *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 402, 737 P2d 595 (1987).

A.    *Notice*

Plaintiff asserts that Defendant's notice removing Plaintiff's property tax exemption was untimely. (Ptf's Trial Resp at 4.) An "assessor is permitted to alter [its] position as to exemption or valuation without notice to the property owner prior to the issuance of the tax statement." *Multnomah Cty. Assessor v. Portland Dev. Com'n.*, 20 OTR 395, 398 (2011). No notice other than the tax statement is required when the county removes an exemption. *Id.* Here, Defendant was not required to send any notice to Plaintiff other than the property tax statement, though Defendant chose to send a letter in September 2019. Plaintiff did not allege that it failed to receive the property tax statement, so no facts indicate that Plaintiff received inadequate notice.

B.    *Discrimination*

Plaintiff claims Defendant "did not perform a fair, equitable and thorough due diligence review," discriminating against Plaintiff when it conducted its property tax exemption

evaluation. (Ptf's Trial Resp at 2.) The Oregon Constitution and United States Constitution each address discriminatory treatment. Oregon's Constitution, Article I, section 32 provides that "all taxation shall be uniform on the same class of subjects" and Article IX, section 1 provides that "[a]ll taxes shall be levied and collected under general laws operating uniformly throughout the State." Section 1 of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of the law; nor deny to any person within its jurisdiction the equal protection of the laws."

"[T]axing authorities may not single out one taxpayer for discriminatory, or selective, enforcement of a tax law that should apply equally to similarly situated taxpayers." *Comcast Corp. v. Dept. of Rev.*, TC 4909, 2017 WL 6055041 (Or Tax Mar 29, 2017), quoting *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 385-86, 430 P2d 349 (1967). Plaintiff "must demonstrate an intentional and systematic pattern of discrimination." *Pacificorp Power Marketing v. Dept. of Rev.*, 340 Or 204, 219, 131 P3d 725 (2006), citing *Freightliner Corp. v. Dept. of Rev.*, 275 Or 13, 17, 549 P2d 662 (1976). The good faith of officials is presumed, and Plaintiff must prove "'something which in effect amounts to an intentional violation of the essential principle of practical uniformity.'" *Freightliner Corp.*, 275 Or at 17, quoting *Sunday Lake Iron Co. v. Wakefield*, 247 US 350, 38 S Ct 495, 62 L Ed 1154 (1918).

Plaintiff did not provide evidence to demonstrate Defendant singled out Plaintiff for discriminatory or selective enforcement of a tax law. Cole testified that Defendant reviewed 137 accounts receiving exemption, finding that 17 did not meet the charitable use standard. The court received no evidence of an intentional or systematic pattern of discrimination by

Defendant. Plaintiff failed to carry its burden of proof on its discrimination claim.

C.      *Whether Plaintiff Actually and Exclusively Used the Subject Property to Achieve its Charitable Purpose*

For a charitable institution to receive property tax exemption, the property must be "actually and exclusively occupied or used" in its charitable work. ORS 307.103(2)(a). Exclusive use "refers to the primary, as opposed to the incidental use of the property." *Mercy Medical Center, Inc. v. Dept. of Rev.*, 12 OTR 305, 308 (1992), citing *Multnomah School of the Bible v. Multnomah Cty.,* 218 Or 19, 29, 343 P2d 893 (1959). "There is no statutory requirement that property that otherwise qualifies for exemption must be continuously used for the exempt purpose, so long as non-exempt *uses* do not become primary." *YU Contemporary v. Dept. of Rev.*, 22 OTR 349, 367 (2017) (emphasis in original). The charitable institution's use "must 'substantially contribute' to achieving the [institution]'s purposes." *Mercy Medical*, 12 OTR at 308. Charitable use depends on "the nature of the work that a taxpayer carries on and the relationship between that work and the property at issue." *Habitat for Humanity v. Dept. of Rev.*, 360 Or 257, 264, 381 P3d 809 (2016). Certain uses may qualify one institution's property for exemption but not another's, depending on the specific charitable purpose of each institution. *Compare Dept. of Rev. v. New Friends of Beaverton City Library*¸ TC 5311 2019 WL 6358467 (Or Tax Nov 26, 2019) (plaintiff's bookstore was not exempt because it operated as a retail store that sold used books) *with U. of O. Co-Oper. v. Dept of Rev.*, 273 Or 539, 549, 542 P2d 900 (1975) (university bookstore was exempt because it operated "as an integral part of the University to further its 'educational purposes'").

Longstanding Oregon precedent requires "an actual charitable use of the property rather than just a charitable use of the income derived from the operation of the property." *YMCA v. Dept. of Rev.*, 308 Or 644, 649 n1, 784 P2d 1086 (1989). "The Oregon Supreme Court first

considered—and rejected—the so-called 'destination of income' theory of charitable exemption in 1895." *New Friends of Beaverton City Library*, 2019 WL 6358467 at *6, citing *Portland Hibernian Benevolent Soc'y v. Kelly*, 28 Or 173, 189, 42 P 3 (1895).

A charitable institution that directly competes with other similar businesses may not be entitled to exemption on that basis. *See New Friends of Beaverton City Library*, 2019 WL 6358467 at *6-8 (discussing several such examples).[4] A charitable institution "does not lose its exemption merely because it engages in competition with businesses which are subject to taxation. * * * It is enough if the activity undertaken on the property substantially contributes to the furtherance of the charity's goals." *YMCA v. Dept. of Rev.*, 268 Or 633, 635, 522 P2d 464 (1974). A charitable institution's property overcomes the restriction on exemption when "it does not come into competition with the property of other owners" and offers goods or services "at a discount below-market value" that furthers the charitable institution's primary purpose. *See e.g.*, *New Friends of Beaverton City Library*, 2019 WL 6358467 at *8 (taxpayer did not make books available to the poor for free or at below-market prices on the subject property).

The court finds that Plaintiff's primary use of the subject property golf course was in furtherance of Plaintiff's charitable purpose. Plaintiff's purpose was to make golf available to people of all social status, particularly youth, and the subject property substantially contributed to that purpose through educational programs, free access for youth, and below market rates for all community members. Before Plaintiff leased the subject property, Plaintiff transported youth to Harbor Links Golf Course to hold its summer program, requiring Plaintiff to generate funding from grants and donations. To become self-sustaining, Plaintiff constructed a golf course on the

---

[4] In *Portland Hibernian Benevolent Society*, 28 Or at 193-94, the court explained that "when such property is used for the purpose of accumulating money, the law imposes upon it the same burden of taxation as it imposes upon other property similarly situated."

subject property and kept its operating expenses low. Thus, the subject property served as an integral part of Plaintiff's operations by providing a stable location for Plaintiff's charitable works and giving Plaintiff more control over its expenses.

Defendant conceded that Plaintiff was a charitable institution but challenged Plaintiff's actual and exclusive use of the subject property. Defendant suggested that, although charitable, two educational classes and a six-week summer golf program did not constitute the primary use of the subject property. Defendant used temporal analysis and concluded Plaintiff used the subject property for charitable purposes approximately 10 out of 215 days the subject property was open to the public. Defendant construed Plaintiff's charitable use of the subject property too narrowly. It failed to consider that the subject property served Plaintiff's primary purpose when patrons golfed at below-market rates and youth golfed for free. Plaintiff's charitable use of the subject property extended to more than the 10 days Defendant calculated.

Defendant asserted Plaintiff primarily operated the subject property as a public golf course to generate income for its charitable activities, urging the court to deny exemption based on the "destination of income" theory. Although Plaintiff generated income to support its youth golf education program, the "destination of income" theory does not apply because Plaintiff operated the golf course in furtherance of its charitable purpose. When the subject property was open to the public, it did not compete with other golf courses and it offered below-market rates to all patrons. The subject property was not a typical fee-based golf course. Unlike other golf courses in the county, it did not offer 18 holes, did not have a clubhouse, and could not host competitive tournaments. Its maintenance budget of $8,000 to $12,000 was a fraction of Running Y Ranch Resort's $1,000,000 maintenance budget. Plaintiff's goal was not to maximize profit, but rather to create free and below-market golfing opportunities for

disadvantaged youth and other members of the local community.

The subject property offered below-market rates that made golf accessible for people regardless of socio-economic status. The subject property charged patrons $5 to $20 to play golf, whereas Running Y Ranch Resort charged up to $90. Ray, Lang, and Souza each testified that the subject property offered the most affordable rates in the county. Plaintiff charged its fees on the honor system and waived fees for Souza when he could not afford to pay.

Defendant asserted that Plaintiff did not exclusively use the subject property based on the Secretary of State registry listing the subject property address for another organization, the 1st Nations Golf Association. Defendant did not provide any further evidence of nonexclusive use, and Ray credibly testified that the 1st Nations Golf Association dissolved in 2014 and did not use the subject property. The court finds that Plaintiff's use of the subject property was exclusive.

III. CONCLUSION

Upon careful consideration, the court concludes that Defendant provided adequate notice for removal of the subject property's tax exemption for the 2019-20 tax year; Plaintiff did not provide sufficient evidence to prove its discrimination claim; and because Plaintiff actually and exclusively used the subject property in its charitable work under ORS 307.130(2)(a), the subject property is exempt from property taxation for the 2019-20 tax year. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.



*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on September 3, 2020.*